## Hacker et al. v. Commonwealth.

Nov. 7, 1941.

J. H. Asher for appellants.
Will C. Hoskins for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On September 7, 1941, Johnny Napier was killed in Leslie county on a public county road therein by being knocked down and assaulted with rocks or other missiles whereby he was felled to the ground, and while lying there he was shot six times with a pistol, resulting in his instant death. The county judge of the county on the following day, on the affidavit of Will Baker, issued a warrant for the arrest of appellants, Charles Hacker and John L. Roberts, and in which they were accused of wilfully murdering the deceased, Napier. They were arrested thereunder and had an examining trial before the county judge of Leslie county, who held them to the grand jury without the right of bail, since it was his determination that the testimony introduced before him made out a non-bailable case. However, he ordered and directed that the defendants in the warrant be removed from Leslie county and delivered to the jailer of Laurel county because of unsafety of the Leslie county jail, as well as unfavorable clamor against defendants for the crime with which they were charged. After their delivery to the jailer of Laurel county this motion by appellants for a writ of habeas corpus was filed by them in the Leslie circuit court in which they prayed for an order permitting them to give bail, which, in effect, would be a reversal of the order of the county judge, following the examining trial before him. It was stipulated that the testimony heard before the county judge, which was taken and transcribed by a stenographer and filed in the court, might be read at the hearing of the habeas corpus motion before the circuit judge, all of which was done, with some additional testimony heard at the trial of the motion in the circuit court. Upon all of the evidence so introduced the circuit court judge overruled the motion for the writ, followed by this appeal to this court.

The right of appeal in such a case is given by chapter 93 of the Acts of 1940, appearing on page 375 of the published session acts for that year. It is an amendment to Section 429 of our Criminal Code of Practice. Chapter IV of that Code, of which the section, supra, is a part, denied the right of appeal to this court from rulings upon motions for such writs, but the amendment of 1940 granted that right upon certain conditions which

were complied with in this case. Section 426 of the same Code permits an application of this sort (to obtain bail though denied by an examining court) to be made before the judge of the circuit court before which the applicant is held to answer, and which authorizes this proceedings, notwithstanding the ruling of the county judge denying bail. There is, therefore, presented only a single question of fact, i. e., whether or not the testimony shows that degree of probable guilt of appellants which would disentitle them to bail, as prescribed in Section 16 of our Constitution? Neither of them testified, either in their examining trial or in the trial of the motion for the writ before the circuit judge. The testimony of a number of young boys and girls who were present at the time established without contradiction a wholly inexcusable homicide, even to the degree of wilful assassination, and none of that testimony was contradicted by any witness on either hearing.

Appellants introduced one witness who testified to some threats made against one of them by the deceased sometime prior to the killing, and upon the hearing before the circuit judge they introduced testimony as to the bad moral character of the deceased, including his conviction of some prior committed felony or felonies, but the punishment for which he had satisfied. Deceased was known as a "bootlegger" in the community, and possessed a more or less quarrelsome disposition, as shown by the appellants' witnesses testifying at the hearing before the circuit judge; but we have yet to be cited to any law which excuses the utterly unprovoked killing of a person of bad character, or permits his life to be taken from him without legal excuse, or anything that smacks of probable incentive. The one guilty of such homicide is nevertheless punishable as provided by law for the particular offense, although his victim may himself have been an incorrigible law violator.

Briefly stated, the substance of the commonwealth's testimony at each of the hearings, was to this effect: Some young people, consisting of both girls and boys, were wandering around together in the neighborhood on the evening of the fatal day, and they finally arrived at the country store of one Sherman Leddington. The deceased was there at the time, though he was not one of the wandering crowd. Something was said by someone about rabbit hunting, and he (deceased) made the re-

mark that he would allow no one to rabbit hunt on his premises without a prior notice given to him, which remark is the only one that was made preceding the killing that was in the least calculated to call for or produce any antagonism or quarrel. The wandering crowd soon left the store and started up the country road, arriving at a place some short distance from the store where a road turned off going up a creek towards the home of the deceased, and, perhaps, towards the home of some members of the party. There was a hesitation at that spot and two of the members of the crowd, including appellant, Hacker, went back to the store to get some candy with which they soon returned and distributed it among the members of the crowd. About that time the other appellant, John L. Roberts, approached from the opposite direction, he not having been in the crowd prior to that time. He and the other defendant Hacker then held a whispered conversation apart from the crowd.

Soon thereafter the deceased was seen coming from Leddington's store. He had been drinking to some extent and his demeanor exhibited it. When he arrived at the crowd he asked for a match; whereupon the defendant, Roberts, asked him what was the matter with him, and immediately grabbed him by the hair of the head and commenced striking him with his fists, as well as with something in his hand which was later found to have been of sufficient substance to produce a fracture of the skull with an indenture therein about the size of a silver dollar. After deceased fell to the ground and while lying there he was shot by Hacker six times with his pistol. The deceased was unarmed, and none of the witnesses testified to any demonstration or threats by him towards either of the defendants or anyone else.

A witness for the commonwealth testified that some days prior to the fatal one, one of the defendants made a threat, in substance, that he intended to kill the deceased with his pistol, which he then exhibited. It was also proven without contradiction that Hacker on the way from the Leddington store to the point where the crowd stopped, as above pointed out, had his pistol in his bosom with the handle exposed, and affectionately patted it as though he expected it to stand by him in a possible encounter.

What we have said is not only the substance of the testimony heard before both the circuit judge and the

county judge, but it is substantially all of the testimony that either of them did hear, and from which there is no escape from the conclusion that both tribunals properly ordered and directed that the case as made out before them was a non-bailable one under the provisions of Section 16, supra, of our Constitution, saying that "All prisoners shall be bailable * * * unless for capital offenses when the proof is evident or the presumption great." The non-bailable situation therein excluded is clearly shown by the testimony as presented in this record. What appellants may produce at the trial of the indictment in extenuation of their guilt is not attempted to be disclosed. Hence the conclusion herein expressed is, of course, without prejudice to any developments made at that trial.

Wherefore, for the reasons stated, the judgment is affirmed.