### DUKE v. SMITH.

Court of Appeals of Kentucky.
Dec. 5, 1952.

Rodes K. Myers, Bowling Green, for appellant.

Wm. H. Natcher, Bowling Green, J. D. Buckman, Jr., Atty. Gen., W. Owen Keller, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

Parker Duke was committed to jail by the judge of Warren County as an examining court, without right to bail, upon three charges of murder. Sections 66, 71, 80, 81, Criminal Code of Practice. He has sought release or the right to give bond by a habeas corpus proceeding before the judge of the circuit court. Sections 399, 426, Criminal Code of Practice. The judge denied the writ and Duke appeals.

It is laid down in Smith v. Henson, 298 Ky. 182, 182 S.W.2d 666, 668, that where the petitioner has been denied bail by an order of a court, the proceeding is in the nature of a collateral attack upon the judgment. It is said, by adoption of a text, that "the primary, if not the only, object of habeas corpus is to determine the legality of the restraint under which a person is held." It was decided that a trial de novo on the merits of the prisoner's claim to bail was not authorized. He had been indicted for murder and the circuit court by a previous order had denied bail. The decision is in accord with the principle applied to similar proceedings to obtain release from imprisonment under a judgment of conviction. Harrod v. Whaley, Ky., 239 S.W.2d 480; Brown v. Com., Ky., 243 S.W.2d 885.

Under this concept it would appear that the inquiry of the circuit judge on a petition for habeas corpus should be whether or not the examining court in denying bail acted without jurisdiction, or capriciously or arbitrarily, or otherwise deprived the accused of his constitutional right. But a judgment of an inferior court except where it has exclusive jurisdiction is not accorded the dignity or force of a judgment of a circuit court. Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925. In all our cases of habeas corpus to obtain release upon bail, with one exception (so far as we have noted), the accused was under indictment and the motion for bail was originally made in the circuit court. The exceptional case is Hacker v. Com., 288. Ky. 222, 155 S.W.2d 867, where the circuit judge reviewed the evidence heard by the examining court and received some additional testimony.

A consideration of this matter of practice where the two courts are not of co-ordinate jurisdiction, as in the present instance, leads us to the conclusion that the circuit judge may accept prima facie the order of the county judge as a committing magistrate, giving it such weight as the circumstances authorize, but try the question of habeas corpus de novo. There are impelling reasons that the order of the county judge should not be regarded as res judicata, subject only to inquiry as to its reasonableness. First, the circuit judge is dealing with two of the most valuable of personal rights, recognized and established in the Bill of Rights as "great and essential principles of liberty and free government." Bill of Rights preceding Sec. 1, Kentucky Constitution. These are the right to bail pending trial and to habeas corpus. The accused is entitled to bail as a matter of unqualified right when charged with any criminal offense except one that may be punished by death. In a capital offense he has such right unless the Commonwealth shall produce proof of manifest guilt or evidence sufficient to create great presumption of guilt. Sec. 16, Kentucky Constitution. And the statutes make avail-

able the writ of habeas corpus where there is probable cause to believe the petitioner "*is* (right now) imprisoned when by law he is entitled to bail." (Emphasis added.) Sec. 399, Criminal Code of Practice. Then, the presumption of innocence prior to conviction is a continuing one. Having the right at any time to resort to habeas corpus, if the petition sets forth legal justification for the issuance of the writ, the burden devolves upon the Commonwealth to prove facts showing the petitioner's detention without bond to be reasonable and lawful according to the standard prescribed. Burton v. Com., 307 Ky. 825, 212 S.W.2d 310; Harrod v. Whaley, supra, 239 S.W.2d 480.

In the instant case the respondent set up in her answer the examining trial and judgment of commitment of the petitioner by the quarterly court or county judge. On the hearing, however, the circuit judge placed the burden upon the Commonwealth and it presented proof. The defendant did not testify but introduced a witness. The judge expressed the opinion that the petitioner was being legally held under a valid judgment. It may not be assumed the judge ignored the evidence he heard, which was shown to be in substance the same as that heard by the examining court. We, therefore, look to the evidence in the light of the foregoing qualification of the opinion of Smith v. Henson, supra, 298 Ky. 182, 182 S.W.2d 666, limiting its full effect to a previous order of a circuit court.

The chief of police of Bowling Green was the only witness introduced by the Commonwealth. He testified to things he knew and had seen, to statements of the accused and of other persons in his hearing. We state the testimony in its brief essentials:

The officers were called to a house on Chestnut Street in the middle of the afternoon of September 25, 1952, apparently by the accused. The bloody bodies of Josephine Abernathy and Narcissus Bell were on the floor in a room which had been occupied by him. The head of one of the women had been crushed, part of the skull being separated from the body. Both women had been shot. Across the hall was the body of Horace Buford on a bed. He too had been shot and struck in the head. Two discharged bullets were recovered from his pillow and mattress, and several empty shells were on the floor. Two pistols of different caliber had been used. Blood was all over the floor and some was splattered on the wall. The dresser and wardrobe drawers had been taken out and turned upside down throughout the house and it was otherwise "messed up quite a bit." Two drawers had been put on top of the bodies of the women. All this, it may be observed in passing, leaves the impression that the job of making it appear the house had been robbed was overdone. The accused's shoes, found in the house, had much blood on the soles and heels. He had some scratches on his forehead. A small bag containing a pistol and a pair of pliers was recovered from the nearby river. Duke admitted the bag and pliers were his but not the pistol. He had told the officers his bag was missing. He had owned a pistol and told them where he kept it in a wardrobe, but they did not find it. These and other exhibits found in the house were not available on this hearing, because they had been sent away for technical examination.

The accused is an itinerant gambler. That is his only business. He had had a room in the house off and on for three years and regularly for about three months. He told the officers he had gone to the house about midnight with some companions who had left him there. He could not arouse anyone, nor open a window to get in, so he had gone in a taxicab to Franklin. He had come back about eight o'clock the next morning but was unable to get into the house and then had returned to Franklin and had come back to Bowling Green in the afternoon and found the situation described. His companions of the night before, two men and two women, had told the officers in the presence of the accused they had gone inside the house, but the women who lived there would not let them stay all night together, and they had left. Duke remained in the house quarreling with the women. When the officers went to the house that afternoon Duke had on a fresh shirt and underwear and a recently pressed

suit of clothes, which shirt and clothes were not the same he had worn the night before.

One of the women companions was called by the petitioner as a witness. She related what she and the others had done the night before, including some drinking. She told of the refusal of Josephine and Narcissus to let them stay there. They left Duke in the house talking loudly to the two women. The witness had seen some money in a glass jar in Duke's room. They had left Richard Woods in front of the house for a while, but picked him up later and all of them went to Nashville about three o'clock in the morning. It appears that Woods and the other man had been held under a $250 bond on charges of these murders.

The appellant, petitioner, argues very vigorously that the other two men are guilty and the evidence is insufficient to establish his guilt. Irrespective of any weight to be given the commitment without bond by the examining court, it seems to us this evidence, prima facie, meets the test of showing great presumption of guilt. Therefore, the circuit judge properly denied the writ of habeas corpus.

Judgment affirmed.