## Ex parte RICHARD VERDEN, Petitioner.

In Banc, February 9, 1922.

1. **BAIL: Accidental Shooting.** Where the deceased at the time he was shot stated that he knew petitioner did not intend to shoot him, and he died two weeks later without having made any dying declaration, and the petitioner stated at the time that he asked the deceased to stop his automobile and he shot at the tires to stop the car and one shot struck deceased, and the testimony of all the eye-witnesses, whose names are the only ones indorsed on the information, is to the effect that the shooting of deceased was accidental and not intentional, the petitioner is entitled to bail.

2. ————: **Presentation of Evidence: Utmost Fairness.** In ruling on petitioner's application for bail the court will not speculate concerning the existence of facts not before it. The court and the petitioner are entitled to the utmost frankness on the part of the prosecuting officers, and bail will not be refused on the bare statement of the representative of the State that he has in his possession other testimony not disclosed by the record.

3. ————: **Filing of Information: Presumption of Guilt.** The presumption arising from the filing of an information charging a capital offense stands only until the facts appear; in the consideration of a writ of *habeas corpus* filed by the accused asking for bail, the question of his right to bail must be determined alone from the facts and circumstances shown. The presumption of guilt arising from the filing of an information charging a capital offense is not to be weighed in the scales when the actual evidence is before the court on the hearing of the application. [Overruling In re Alexander, 59 Mo. 598, and Ex parte Goans, 99 Mo. l. c. 197, in so far as they announce a contrary rule.]

4. ————: ————: ————: **Proper Test.** On an application for bail by a defendant who has been charged in the information with a capital offense, the proper test is whether the evidence before the judge on the hearing tends strongly to show guilt of the capital offense. If it does, bail should be denied; if it does not, bail should be granted. [Overruling Ex parte Claunch, 71 Mo. l. c. 236, where it is said to be "a safe rule to refuse bail in case of malicious homicide, where the judge would sustain a capital conviction, pronounced by a jury, on evidence of guilt, such as

that exhibited on the application to bail, and to allow bail where the prosecutor's evidence is of less efficacy," for that pronouncement means that the evidence on the application for bail must be considered as the trial court looks at it when challenged by a motion for a. new trial based on the ground that the verdict is contrary to the evidence, and such a rule is altogether too strong against a petitioner for báil.]

5. ——: Purpose. The only theory on which bail can be denied in any capital case is that the proof is so strong as to indicate the probability that defendant will flee if he has opportunity, rather than face the verdict of a jury. He cannot be confined in jail prior to trial on the theory that he may eventually be convicted of the capital offense by a jury, but his confinement is authorized only for the purpose of insuring his presence at the trial; and if the proof heard upon his application for bail is not evident or the presumption great, he should be admitted to bail in such sum as in the judgment of the court will insure his presence.

6. ——: Intentional Killing: Murder in Second Degree: Lying in Wait. The intentional use of a deadly weapon by one at a vital part of the body of another, resulting in death, absent proof of facts tending to establish deliberation or lying in wait for the purpose of committing a crime, is murder in the second degree; and, a defendant, charged with a capital offense, who shot at the tires of an automobile which deceased was driving, not with the intention of shooting him, but to halt the car, did not kill by lying in wait, and he is entitled to bail.

7. ——: ——: Production of Evidence. Notwithstanding the admission to bail of a defendant charged with a capital offense, the State upon his trial may by other evidence show the shooting was intentional or that he committed the act deliberately or by lying in wait; but if the State has such evidence, it must produce it upon defendant's application to bail, if by such evidence it wishes to prevent him from being admitted to bail.

8. ——: On Habeas Corpus: Denial by Other Courts. Notwithstanding the Circuit Court and the Court of Appeals denied the application to bail of an accused charged by information with a capital offense, the Supreme Court on *habeas corpus* will admit him to bail if the testimony taken at the hearing of the application in the trial court fairly discloses that the proof is not evident or the presumption great that the killing was deliberate, or the result of lying in wait for the purpose of killing deceased, or was done in an attempt to commit robbery or other crime mentioned in the statute defining murder in the first degree.

*Habeas Corpus.*

WRIT GRANTED.

*Lyons & Ristine* for petitioner.

*Frank B. Fulkerson,* Prosecuting Attorney, and *Aull & Aull* for respondent.

(1) The Constitution provides that "All persons shall be bailable by sufficient sureties, except for capital cases when the proof is evident or the presumption great." Mo. Constitution, art. 11, sec. 24; Kelley's Crim. Law & Proc. (3 Ed.) p. 69, sec. 78; State v. Allen, 275 Mo. 394. (2) The offense with which the prisoner is charged in the indictment is a capital one within the meaning of the Constitution. It may be punishable with death, that is to say, liable to punishment with death. R. S. 1919, sec. 3232; Ex parte Dusenberry, 97 Mo. 507; State v. Gray, 100 Mo. 524; State ex rel. v. County Court, 136 Mo. 326; Ex parte Heath, 227 Mo. 398. (3) The right to bail does not rest in the grace or favor of the court, but upon the uncertainty which may exist as to the prisoner's guilt. Kelley's Crim. Law & Proc. (3 Ed.) p. 71, sec. 81; Ex parte Claunch, 71 Mo. 235. (4) Whether the proof is evident or the presumption great, is a question of fact to be determined by the court upon hearing all the evidence. It is not sufficient that there may be reasonable doubt of the defendant's guilt, for it belongs to the jury on final trial to give the defendant the benefit of such doubt, and not to the court on a motion for bail, unless it is so strong that the presumption of guilt is not great. Kelley's Crim. Law & Proc. (3 Ed.) p. 70, sec. 81; Ex parte Claunch, 71 Mo. 235. (5) There may be cases, the circumstances of which would appeal to the sound discretion of the court for the exercise of the power to admit to bail; but this power should be rarely and cautiously exercised. Kelley's Crim. Law &

Proc. (3 Ed.) p. 71, sec. 82. "Although the court may be of the opinion that the accused would appear for trial, yet, if the 'proof is evident or the presumption great,' that he has committed a capital offense, the court has no power to let him to bail." Kelley's Crim. Law & Proc. (3 Ed.) p. 71, sec. 81; Ex parte Claunch, 71 Mo. 233; State v. Summons, 19 Ohio, 140; Ex parte Tayloe, 5 Cow. (N. Y.) 39; Reg. v. Barronet, 16 Eng. L. & Eq. 361. (6) The court will not, in general, admit a defendant to bail, on the *ex parte* testimony which the prisoner may produce in his own behalf, in the absence of any testimony for the State or information as to the facts upon which the prosecution relies. Kelley's Crim. Law & Proc. (3 Ed.) p. 70, sec. 80; 1 Bishop, New Crim. Proc., 257. (7) The indictment for a capital offense furnishes a strong presumption of guilt and that the crime is of the grade charged, and this presumption must be applied in all cases on application for bail. There must be other facts and circumstances which overcome this presumption before the prisoner can be bailed. One or even two mistrials cannot furnish the accused the absolute right to give bail. Ex parte Goans, 99 Mo. 193; Ex parte Alexander, 59 Mo. 598; State ex rel. v. County Court, 136 Mo. 323; State v. Summons, 19 Ohio, 140; Kelley's Crim. Law & Proc. (3 Ed.) p. 71, sec. 82. To the above may be added the several applications heretofore made for bail to the criminal, and circuit courts, and court of appeals, all of which were denied and the prisoner remanded. (8) The general rule after indictment in a capital case is that bail will be refused. Ex parte Alexander, 59 Mo. 600. (9) It is said to be a safe rule "to refuse bail in a case of malicious homicide, where the judge would sustain a capital conviction, pronounced by a jury, on evidence of guilt, such as that exhibited on the application to bail; and to allow bail where the prosecutor's evidence is of less efficacy." Ex parte Claunch, 71 Mo. 236; Commonwealth v. Keeper of the Prison, 2 Ashmead (Pa.), 227; Hurd on Hab. Corp. 435; Commonwealth v. Summons, 19 Ohio, 141; Kelley's Crim. Law &

Proc. (3 Ed.) p. 70, sec. 81; Ex parte Tayloe, 5 Cow. (N. Y.) 39; Reg. v. Barronet, 16 Eng. L. & Eq. 361. It has been many times held by this court that it will not refuse to concur in such conviction unless there be either a total failure of evidence or the evidence is so weak that the necessary inference is that the verdict is the result of passion, prejudice or partiality. State v. Concelia, 250 Mo. 424; State v. Finley, 278 Mo. 474; State v. Reed, 237 Mo. 231; State v. Fields, 234 Mo. 615; State v. Sharp, 233 Mo. 269; State v. Cannon, 232 Mo. 215. (10) The statements of the prisoner are self-serving, made after time for premeditation and design, and not admissible. It does not lie in the mouth or power of a defendant thus to reduce his crime to a bailable offense, nullify the constitutional provision, and secure bail in any case, regardless of the grade of the crime. State v. Strong, 153 Mo. 555; State v. Taylor, 134 Mo. 154; State v. Smith, 114 Mo. 424; State v. Musick, 101 Mo. 274; State v. McKenzie, 228 Mo. 399; State v. Burns, 278 Mo. 446; State v. Thompson, 132 Mo. 322; State v. Hendricks, 172 Mo. 674; State v. Hudspeth, 150 Mo. 27; 1 Wharton, Ev. secs. 259, 260, 261. (11) The evidence exhibited is such that a jury may find deliberation, and premeditation, as well as all other necessary elements of murder in the first degree. The prisoner, however, furnishes a legal equivalent for deliberation and premeditation, by his "lying in wait," which stands in lieu thereof. Riley v. State, 28 Tenn. 644; State v. Taylor, 122 Iowa, 125; Anderson, Law Dict., p. 642; State v. Wagner, 78 Mo. 644; R. S. 1919, sec. 3232. (12) The evidence exhibited shows that the prisoner procured and prepared the revolver, left Lexington en route for the Higginsville road, inquiring as he went; stationed himself about two miles southeast of Lexington on the Higginsville road, along which this automobile driven by Trail would return to Lexington; that no one was perceived, in, at or about the road ahead of the auto, until the auto, with driver and the two ladies reached the place where the shooting took place; that the prisoner, with eyes fixed

on the driver at the wheel, *raised* his hand, demanded that the driver "stop that car," repeated in no unmeaning tone, "Stop that car, I say," and immediately as the car passed on began firing, and continued firing until he got the man at the wheel. The evidence exhibited shows the commission of a capital offense; in fact, a "lying in wait," weapon procured and prepared beforehand, waiting at or near the roadside for the approach of the car, a formed design and settled purpose to kill clearly disclosed, and adequate means employed to accomplish the result. R. S. 1919, sec. 3232; Kelley's Crim. Law & Proc. (3 Ed.) p. 417, sec. 474; p. 420, sec. 475; p. 427; sec. 480; State v. Barrington, 198 Mo. 104; State v. David, 131 Mo. 397; State v. Henderson, 186 Mo. 473.

DAVID E. BLAIR, J.—This is an original proceeding instituted by petitioner filing his petition for a writ of *habeas corpus*, in which he alleged he is being unlawfully deprived of his liberty by J. L. Forsha, Sheriff of Lafayette County, in the jail of said county. Our writ issued, and said sheriff has filed his return thereto, and petitioner has filed answer to such return.

From the return of the sheriff it appears that petitioner is being confined by him in the jail of Lafayette County under a warrant based on an indictment filed in the criminal court of said county; that petitioner made application for bail in said criminal court, and after hearing the evidence the court indicated the application would be refused, and petitioner withdrew his application, and successive writs of *habeas corpus* were applied for and refused by the Circuit Court of Lafayette County and by the Kansas City Court of Appeals on the ground that petitioner stood charged with the crime of murder in the first degree and because the proof was evident and the presumption great.

Petitioner admits that he was indicted for murder in the first degree, charged with killing George Trail, and is confined under process of the court issued in pursuance to the finding of such indictment and that he was

refused bail by the Circuit Court of Lafayette County and by Kansas City Court of Appeals.

The evidence before us upon which petitioner contends that he is entitled to be admitted to bail is contained in a transcript of the testimony introduced in the Criminal Court of Lafayette County on petitioner's application in that court for bail. It appears from the petition for our writ that all the witnesses whose names are indorsed on the indictment were summoned and testified at said hearing before the said criminal court. The testimony of said witnesses is in substance as follows:

W. A. Eastabrook, a farmer living near the scene of the shooting, testified that he saw Verden a few minutes after the shooting, and Verden said he asked Mr. Trail to stop, and he shot to stop the car and one shot struck him.

Dr. A. J. Chalkley testified that he was the first physician called to see George Trail after he was shot; that when he arrived at the scene of the shooting he found George Trail in the front seat of the automobile, with two women in the back seat, and Richard Verden standing by the car in the road. Witness asked what had happened. Dick Verden spoke up and said: "I shot Mr. Trail accidentally. I was shooting at the tires." And Verden's wife, who was sitting in the car, said: "I hired Mr. Trail to take me to Higginsville; we have been down there and on the way back, and Dick shot him—shot him accidentally;" that George Trail was not in a position to talk much; that he was in the stage of extreme shock and very weak. He asked George Trail about the shooting and he said, Dick told him to stop the car; that he was going down hill a little fast and stopped as quick as he could; that he saw Trail was in a critical shape and he asked Verden if he could drive the car with Trail to the latter's home; that Verden said, he was too excited to do anything; that witness drove the car to Trail's home; that Trail never made any dying statement as to how the shooting occurred; that George Trail lived about two weeks after he was shot.

Dr. George W. Fredendall testified he was the physician of the Trail family; that on March 18, 1921, he was called to visit George Trail, on account of a gunshot wound received by him; that he arrived at the Trail home about one hour after the shooting; that he met Verden on the Trail front porch; that George Trail died on April 2nd, without making any dying statement.

Frank G. Gordon testified that he was on the road in a buggy and came to the machine where Verden and the other parties were, about ten minutes after the shooting; that he heard three shots fired; that when he drove up to where the parties were he saw Richard Verden coming out of the Eastabrook gate; that the Trail automobile was about 25 or 30 yards above the Eastabrook gate; that there were two ladies in the car. He said when he stopped, there was a man in the car with a handkerchief over his face; that Verden was standing on the fender of the car; that the two ladies were on the back seat. He asked if anything was wrong and one of the ladies said, "Yes, there was a man accidentally shot;" that witness asked George Trail how it happened, whether he had a revolver in his pocket and whether it went off accidentally; that before Trail had time to answer Verden said he shot him; that the ladies asked witness if he could drive the car to Lexington, and he informed them he could not; that George Trail then recognized witness and asked the latter to go and call a doctor; that he was shot; that Verden and the two women went with Dr. Chalkley when he drove Trail home in the machine; that the two ladies were in the back of the car and Verden was on the fender; that Verden said he told those in the machine to halt and they didn't do it; that he accidentally shot Trail.

Mrs. Lon Bedwell testified that she lived at Lexington, knew Richard Verden, but did not know Trail before the day of the shooting; that she, Mrs. Verden and Trail were the only occupants of the machine. They had been to Higginsville and were returning; that just previous to the shooting she saw Richard Verden in the rock

road near the Eastabrook farm; that he then had his left hand raised, signaling Trail to stop the car; that when the car got close to Verden he hollered, "Stop!" that she did not see him until he hollered, but she heard him holler; that he then said, "Stop that car!" or said, "I say, stop that car!" that after the car passed, several shots were fired; that the car was finally stopped near the Eastabrook gate; that when Richard Verden came up, he said he was shooting at the tires of the car; that he could hardly believe that any person had been struck, until Trail showed him; that Trail told him he knew he (Verden) didn't intend to shoot him.

This brings us to a consideration of the effect of said testimony. Four persons were eyewitnesses to the shooting which resulted in Trail's death. Trail died two weeks afterwards, without making any dying statement. It would seem that an inference can be drawn from his failure to make such statement that any statement he could have made would not have prejudiced the application of defendant for bail. The only statement Trail made which possibly could be regarded as part of the *res gestae* appears in the testimony of the eyewitness, Mrs. Bedwell, that Trail told him (Verden) that he knew he (Verden) didn't intend to shoot him.

The remainder of the testimony of Mrs. Bedwell discloses nothing inconsistent with the petitioner's claim that the shooting was accidental in so far as the injury inflicted upon Trail is concerned.

Petitioner's wife did not testify on the application for bail. It is reasonable to suppose she will not be used as a witness on the trial unless her testimony is favorable to her husband, and the State cannot use her as a witness over the objection of petitioner, no matter how unfavorable to petitioner her testimony would appear to be.

The fourth eyewitness was defendant himself, and we can safely assume he will adhere to his previous declarations that he did not intend to shoot Trail. So much for what might be shown by eyewitnesses not called on the

Ex parte Richard Verden.

hearing before Judge Rich. We have no right to go outside of the facts actually shown on such hearing, but even if we should indulge in speculation as to what might be shown, there is no reason to believe any stronger showing against petitioner could be made by the testimony of the known eyewitnesses. The other witnesses called testified to nothing tending to contradict petitioner's theory of accidental shooting.

Presumably the prosecuting attorney caused the names of all the known witnesses to be indorsed on the information. We have no right to speculate concerning the existence of facts not before us. Such action might lead to the refusal of bail in any case on the bare statement of the prosecuting officer that he was in possession of other testimony which he had not disclosed. This court and the petitioner on this application are entitled to the utmost frankness on the part of the prosecuting officer.

On the evidence aforesaid, petitioner insists that he is entitled to bail and relies upon Section 24 of Article II of our Constitution in support of this contention, which reads as follows:

"That all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great."

It is apparent that the testimony above set out contains statements that may not be ruled to be admissible in evidence on the trial. It is unnecessary to discuss such questions in this proceeding, since it can be determined independently of such statements.

In Ex parte Goans, 99 Mo. l. c. 197, BLACK, J., in discussing the question under consideration, said: "The indictment for a capital offense furnishes a strong presumption of guilt, and this presumption must be applied in all such cases on application for bail. There must be other facts and circumstances which overcome this presumption before the prisoner can be bailed."

This is not altogether accurate. The presumption stands only until the facts appear. When the facts are

291 Mo.—36

shown there is no longer room for the presumption raised by the finding of an indictment, and the question of the right of defendant to bail must be.determined alone from the facts and circumstances shown. The finding of an indictment means nothing more than that the grand jurors determined that a crime had been committed, and that there is reasonable cause to believe that defendant committed the crime and should be put upon his trial therefor. Grand jurors are not required to determine the guilt of a defendant beyond a reasonable doubt. This is only required of the petit jury when the defendant is placed on trial to answer the charge contained in the indictment. The trial jury cannot regard the finding of an indictment or filing of an information as any evidence whatever of the guilt of the defendant, and why should we on this application?

Respondent relies upon the cases Ex parte Claunch, 71 Mo. 233, and In re Alexander, 59 Mo. 598. In the Claunch Case petitioner stood charged with murder in the first degree, and this court held he was not entitled to bail. SHERWOOD, J., at page 236, said:

"It is said to be a safe rule 'to refuse bail in a case of malicious homicide, where the judge would sustain a capital conviction, pronounced by a jury, on evidence of guilt, such as that exhibited on the application to bail; and to allow bail where the prosecutor's evidence is of less efficacy.' Commonwealth v. Keeper of the Prison, 2 Ashm. 227; Hurd on Had. Corp. 435. We incline to the opinion that the above is the proper test to apply and rule to follow, especially by a court of last resort."

After quoting the rule as laid down in the Claunch Case, respondent cites State v. Concelia, 250 Mo. 411, 1. c. 424, and State v. Finley, 278 Mo. 474, 1. c. 480, as tending to support the rule. These cases were not applications for bail, but were here on appeal. In the Concelia Case, FARRIS, J., said:

" 'The rule is, that before this court will relieve on the ground that the verdict is not supported by the evi-

dence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is, that the verdict is the result of passion, prejudice or partiality.' ''

Surely Judge SHERWOOD did not mean to lay down the rule in the Claunch Case that this court or any other court, in passing on the right of accused to bail, should consider the evidence from the standpoint of an appellate court and deny bail unless there was no evidence at all against accused or unless the evidence was so weak that a verdict of guilty creates an inference that such verdict is the result of passion, prejudice or partiality. The obvious result of following such a rule would be to deny bail practically in every case where a capital offense is charged. Such a rule would violate the plain provision of the Constitution that all capital cases are bailable, except where the proof is evident or the presumption great.

It must be assumed that Judge SHERWOOD meant that the evidence on application for bail must be considered as the trial court looks at it when challenged by motion for new trial on the ground that the verdict is contrary to the evidence. But the rule as thus understood states a rule altogether too strongly against petitioner for bail. We think the proper test is whether the evidence before the judge on the hearing for bail tends strongly to show guilt of a capital offense, which is only another way of saying the proof must be evident or such facts must be shown as to raise a strong presumption of guilt of the crime charged. If so, bail should be denied; if not, it should be granted.

Confinement in jail prior to trial is not authorized because defendant may eventually be convicted of the charge by a jury, or as any part of his punishment, if guilty, but to assure his presence when the case is called for trial and during the progress thereof. The only theory on which bail can be denied in any capital case is that the proof is so strong as to indicate the probability that defendant will flee if he has the opportunity, rather

than face the verdict of a jury. Where the proof is not evident or the presumption great the accused should be admitted to bail in such sum as in the judgment of the court will insure his presence to submit himself in judgment before the trial court. The amount will be determined by the court in view of all the circumstances in the case and the extent of the ability of the accused to give it. The rule laid down in the Claunch Case, however understood, is in conflict with the conclusion we have reached and that case is therefore overruled.

In the Alexander Case, supra, WAGNER, J., said:

"The general rule is, that bail will be refused after indictment in capital cases; for the indictment furnishes a strong presumption of guilt, and it is supposed the accused will almost always attempt to leave and elude the demands of justice. Hence, in all such cases there must be facts and circumstances which counteract or overcome this presumption, before bail will ever be admissible."

The rule as thus stated is out of harmony with our conclusion here, and that case is overruled in so far as it states such rule. That rule permits the presumption arising from the finding of an indictment for a capital offense to be weighed in the scales when the actual evidence is before the court. When the evidence is before the court such presumption performs no office whatever.

Ex parte Goans, supra, follows the rule laid down in the Alexander Case and must be disregarded. It was there held that accused met the requirements of the harsh rule referred to and he was admitted to bail. So we might well say in the instant case that petitioner had met even the harsh rule of the Claunch and Alexander cases and is entitled to bail under the test there laid down. We have only considered those cases so fully because we think they lay down an unsound rule and should be gotten out of the way on future applications.

All that the evidence before us on this application shows is that defendant shot and killed deceased with a deadly weapon. Defendant claimed he was shooting at the tires of the automobile and did not intend to shoot

deceased. The general rule is that the *intentional* use of a deadly weapon by one at a vital part of the body of another, resulting in death, and absent proof of facts tending to show deliberation or lying in wait for the purpose of committing any of the crimes designated in the statute, raises the presumption that such killing was murder in the second degree. [State v. Minor, 193 Mo. 597; State v. Young, 119 Mo. 495.] Even if defendant shot deceased intentionally he is, under the above rule, entitled to bail. Merely because accused sought to halt deceased's automobile and fired when it was not promptly stopped, does not show a killing by lying in wait. [25 Cyc. 1659.]

What we have here said is not intended as a prejudgment of the case on its merits. The State may have other testimony which will develop facts tending to show that the shooting was intentional or that the defendant committed the act deliberately or by lying in wait. What we do mean to say is that the State has not shown such facts on this application for bail, and we must pass on the application in the light of the evidence given on this application. If the State has such evidence, it must produce it on this application if it wishes to prevent defendant from being admitted to bail.

We are aware from the record that petitioner's application for bail was in effect denied by the criminal court and that in *habeas corpus* proceedings before the Lafayette Circuit Court and the Kansas City Court of Appeals he was denied the privilege of bail and have given such facts due consideration. But such previous rulings cannot relieve us of our duty to determine the matter for ourselves, and we have reached a different conclusion. We think that the testimony fairly discloses that the proof is not evident or the presumption great that the killing was deliberate or the result of petitioner lying in wait for the purpose of killing Trail or attempting to perpetrate a robbery or other crime mentioned in our statutes definding murder in the first degree.

Petitioner is therefore entitled to bail. He will be remanded to the custody of the Sheriff of Lafayette County until such time as he shall file with said sheriff a bond in proper form in the sum of ten thousand dollars for his appearance to answer the indictment in the court where same is now pending, with good and sufficient sureties to be approved by the judge of said court.

*James T. Blair, C. J.*, and *Graves* and *Higbee, JJ.*, concur; *Elder, J.*, concurs except as to amount of bond, believing it should be larger; *Walker, J.*, dissents; *Woodson, J.*, absent.