## EX PARTE PAUL FISELE, Petitioner.

### In Banc, March 12, 1925.

1. **BAIL:   Insanity:   Habeas Corpus.**   The defense of insanity to a
   charge of murder, based on expert testimony at a coronor's inquest,
   cannot be considered in determining defendant's right to be ad-
   mitted to bail, upon his application for a writ of *habeas corpus.*

2. ———: **Murder: Deliberation.**   There was deliberation unless the
   homicide was committed suddenly and without time to reflect.
   Where petitioner, some hours after he had full knowledge of what
   he considered deceased's wrongful act towards his sister, with a
   pistol sought out deceased at his brother's house, but being
   thwarted in his attempt to shoot him, went away, returned the next
   day, and as deceased was entering the door came up from behind
   and stabbed him in the back, pursued him as he ran and continued
   to stab him in the back until he was dead, his act was murder in the
   first degree, deliberately done, and he is not entitled to bail on the
   theory that the proof of the capital offense is not evident or the
   presumption great.

Citation to Headnotes: **Bail,** 6 C. J. 179, 171.

*Habeas Corpus.*

WRIT DENIED AND PETITIONER REMANDED.

*W. D. O'Connor* for petitioner.

*Howard Sidener* for respondent.

ATWOOD, J.—Paul Fisele, indicted for murder in
the first degree, denied bail in the Circuit Court of the
City of St. Louis, applies for writ of *habeas corpus.*   Evi-

dence below consisted of testimony and verdict at coroner's inquest and examination of two mental experts called by petitioner. Same evidence is offered here with statements of two more specialists in mental diseases. The facts disclosed are substantially as follows.

In November, 1924, petitioner, his mother, and his sister, Helen Fisele, were living at the same home in the city of St. Louis. This sister was a special object of petitioner's solicitude because of a mental affliction which on occasions necessitated her confinement in a local sanitarium, though the evidence does not disclose that she was ever legally adjudged to be of unsound mind. On Tuesday afternoon November 6, 1924, while Helen Fisele was at home, William Pappas, on account of whose death petitioner stands indicted, called and with the consent of her mother took Helen out riding. They went to the City Hall, procured a marriage license and were married. In the course of the afternoon Helen called her mother by telephone and told her she was married. Her mother told her to come home immediately, and she said she would, but did not make her appearance there until William Pappas brought her the next day. It appears that the couple spent the night together at the home of a relative of William Pappas. As soon as she was left at the Fisele home on Friday, November 7th, petitioner had her removed to St. Vincent's Institution, where she was previously a patient, and a physical examination indicated recent sexual intercourse. Sunday afternoon petitioner procured a revolver and went to the home of Angelo Pappas, looking for his brother, William Pappas. He was told that William was not there, but would return in the evening. Petitioner came back about six o'clock that evening, and in a few minutes William Pappas came in. After some words between them petitioner pointed his revolver at William and tried to fire it, but Angelo Pappas held petitioner while William made his escape. Later Angelo, with the aid of another man, disarmed petitioner, who went way. Petitioner then telephoned for a private detective, and after procuring a long knife at

his mop factory proceeded to the home of William Pappas, where the detective, anticipating trouble, left him. Presently William Pappas appeared, driving home in his car. Petitioner waited until Pappas left his car and reached his door, and as he was about to enter petitioner came up from behind and stabbed him in the back with the long knife which he had previously procured. Pappas ran out into the street, and petitioner pursued him and continued to stab him in the back until he fell and presently expired.

The question raised is whether or not the facts here presented make the proof evident or the presumption great that a capital offense, in this case murder in the first degree, was committed. [Sec. 24, Art. 2, Mo. Constitution; Sec. 3232, R. S. 1919.]

Petitioner offers testimony of mental experts to show that he was insane at the time he killed Pappas. He may interpose the claim of insanity as a defense on his trial, but this issue cannot be determined here. The opinion of medical experts would not in the very nature of things establish the facts upon which that opinion is based, and such testimony should not be considered in this proceeding. [State v. Crane, 202 Mo. 54, l. c. 84.] Neither should we speculate as to what a jury may do with the facts before us, nor what further evidence, if any, may be offered and admitted at the trial.

Petitioner also claims he acted without deliberation. The element of deliberation must exist in addition to willfulness, malice and premeditation to constitute murder in the first degree. [In re Schultz, 257 S. W. 447.] Absent deliberation there would be no capital offense. This much the law by statute concedes to the frailty of human nature acting suddenly under violent passion, "but before it can operate to mitigate a homicide from murder of the first, to murder of the second, degree, the party acting under its influence must act *suddenly* and before he has time to reflect." [State v. Bulling, 105 Mo. 204, l. c. 222; State v. Liolios, 285 Mo. 1, l. c. 22.] Petitioner had knowledge of all the facts not later than

Friday evening and did not kill deceased until Sunday night. It cannot be said that he acted suddenly and without time to reflect. There are no facts before us to reduce the presumption of deliberation. [Ex parte Richard Verden, 291 Mo. 552, l. c. 561.] Petitioner is remanded. All concur, except *Woodson, J.,* not sitting.