54 N.J. Super. 575 (1959)
149 A.2d 828
IN THE MATTER OF THE APPLICATION OF RITA CORBO AND VICTOR CORBO FOR WRIT OF HABEAS CORPUS.
RITA CORBO AND VICTOR CORBO, PLAINTIFFS-APPELLANTS,
v.
HARRY J. DONAHUE, WARDEN OF PASSAIC COUNTY JAIL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1959.
Decided February 9, 1959.
Opinion Filed February 16, 1959.
*576 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Andrew Mainardi, Jr. argued the cause for plaintiffs-appellants (Mr. Andrew Mainardi, Mr. Lawrence Diamond, and Mr. Howard Stern, attorneys).
Mr. Edward J. Wolak argued the cause for defendant-respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
*577 The opinion of the court was delivered by CONFORD, J.A.D.
On February 9, 1959 this court heard argument on the appeal of this matter and announced at the conclusion of the argument that the court had determined that the Superior Court, Law Division, had erred in discharging the writ of habeas corpus. The court announced that an opinion would be prepared as soon as practicable but that an order would be entered forthwith declaring the right of the plaintiffs (defendants to an indictment for murder) to be discharged in such reasonable bail as might be fixed by the trial court. On February 10 such an order was entered. As this court was given to understand that the merits of an appeal from our determination were to be argued in the Supreme Court on February 16, 1959, the preparation of this opinion has been expedited so that it may be available to the parties and to the Supreme Court prior to a determination of the appeal thereto.
Much of the factual background of this matter may be omitted from this opinion, in view of the narrowness of the issue as developed before the trial court and on the appeal. The plaintiffs were indicted for murder on August 12, 1958 by the Passaic County grand jury, the language of the indictment following Criminal Procedure Form No. 9. There is no reference to the degree of murder charged. R.R. 3:4-3(b). Plaintiffs have been incarcerated since July 23, 1958.
A motion to admit plaintiffs to bail was denied after a hearing on October 10, 1958 by a Passaic County judge. The judge had before him certain affidavits by law enforcement officers, including copies of statements given by the plaintiffs. He also heard testimony by Albert Graham, a child who was the brother of the deceased. It is not necessary to discuss the incriminating details thus developed. It suffices for present purposes to say that they indicated that the deceased, Ellen Graham, a three-year-old child who was the ward of the plaintiffs under placement of a state agency, was found dead in her crib on July 11, 1958, and that it was possible or probable that there was a causal relationship *578 between her death and beatings which were administered to her by both of the plaintiffs, involving the use of a strap and a wooden paddle, as well as the hands.
Many cases involving applications of this kind have adverted to the necessity that caution be exercised in discussing the facts, lest the remarks of the court prejudice either the State or the defense on the trial of the indictment. We therefore emphasize that nothing said in this opinion is intended or may be allowed to have any weight or influence whatsoever in the determination of any matter which may arise upon the trial of the indictment.
When questioned by the judge at the hearing as to whether the State had any evidence of either first degree or second degree murder, the assistant prosecutor answered that the evidence indicated second degree murder, i.e., an intent to do serious bodily harm. The judge stated that he found no evidence to indicate the legal requisites of first degree murder but that he did find an evidentiary basis for second degree murder. On that premise he denied bail, concluding that there was sufficient indication "that the proof is evident" for purposes of R.R. 3:9-1(a), which, in language identical with that found in Article I, paragraph 11 of the Constitution of 1947, provides:
"All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great."
Another application for bail was made to a different Passaic County judge, but he declined to pass on it on the ground that he would in effect be reviewing the determination of a judicial colleague of coordinate rank.
Subsequently, the assignment judge of Passaic County granted a writ of habeas corpus to the plaintiffs for the purpose of reviewing the legality of their confinement. He conducted a hearing on the matter, and it was agreed by the parties that he might have resort to the same evidentiary material which was before the judge of first instance. He concluded that the proofs were sufficient to show a case of *579 murder of some degree, whether or not first degree, and that the constitutional provision was construable to withhold the absolute right to bail where there was proof indicating that the defendants might be convicted of some degree of murder, it being immaterial that there was no proof which would permit a finding of first degree murder.
The ruling of the assignment judge was based upon a series of cases, of which State v. Brown, 22 N.J. 405 (1956), was most authoritative, holding that murder is a single offense, divisible into degrees only for purposes of punishment, and that the crime is always to be considered a capital offense because a jury on the trial thereof may return a verdict of murder in the first degree, in which event the law provides for capital punishment unless the jury recommends life imprisonment. For reasons which will be detailed hereinafter, we do not regard the premise thus stated as to the nature of the offense, with which we are in complete agreement, as determinative of the proper construction of the constitutional provision regarding bail.
The briefs and oral argument of the parties on the appeal have kept the issue before us as narrow as it was in the trial court. The present representative of the prosecutor (not the representative who appeared in the Law Division), while taking the technical position, not advanced below, that the proofs would permit a trial jury to return a verdict of first degree murder, frankly conceded before us that the proof is not "evident" or the presumption "great" of the existence of the legal prerequisite for first degree murder of a premeditated killing. We do not regard the position of the State as implying any serious pretension that there is any reasonable basis at all to anticipate a verdict of murder in the first degree at the trial. The State has chosen to confine its position on the appeal to that which it successfully advanced on the hearing upon the writ, viz., that evidence of guilt of murder in the second degree is sufficient to negative the right of bail under the Constitution and the rule of court. The plaintiffs, on the other hand, have refrained from any contention for present purposes that the evidence is not *580 sufficient to show second degree murder. Their position is simply that a showing no stronger than that does not constitute proof "evident" or presumption "great" of guilt of a capital offense within the meaning of the constitutional provision.
In view of the foregoing, we deem ourselves relieved of such troublesome and difficult problems, frequently arising on applications for bail in homicide cases, as the existence or strength of any presumption of guilt attaching to the fact of the indictment, or concerning the placement of the burden of proof or the quantum of evidence necessary to sustain or refute any burden imposed. See State v. Williams, 46 N.J. Super. 98 (Cty. Ct. 1957); State v. Goldstein, 40 N.J.L.J. 71 (Sup. Ct. 1917); State v. Kuchler, 3 N.J. Misc. 636 (Sup. Ct. 1925); State v. Capawanna, 3 N.J. Misc. 876 (O. & T. 1925); Ford v. Dilley, 174 Iowa 243, 156 N.W. 513 (Sup. Ct. 1916) (a most scholarly and exhaustive treatment of these subjects and a compendious collection of all of the authorities up to that date); State v. Teeter, 65 Nev. 584, 200 P.2d 657 (Sup. Ct. 1948); Code of Criminal Procedure of American Law Institute (1930), § 68; see also 8 C.J.S. Bail § 34, p. 54 et seq.
We refrain from expressing any opinion as to the extent of any presumption which should attend the return of an indictment for murder concerning the existence of evident proof or great presumption, in the constitutional sense, of the guilt of the defendants of a capital offense for purposes of bail. It may be noted that the brief of the prosecutor in the present case agrees with the contention of the plaintiffs "that an inquiry should be made into the facts behind a murder indictment on an application for bail." We should, however, express our disapproval of the apparent holdings in State v. Goldstein and State v. Kuchler, both supra, that the return of the indictment for murder is conclusive, or practically so, of the guilt of the defendant, for purposes of bail. This does not appear ever to have been the predominant view in those jurisdictions which have constitutional provisions like ours, and the commentaries *581 appended to the Code of Criminal Procedure, supra (1930), list only three jurisdictions so holding (including New Jersey on the basis of the Kuchler case), op. cit., supra, at p. 346. Sixteen jurisdictions are listed to the contrary on the basis of court decisions and six more by express statutory provision. Section 68 of the Code places the burden on the indicted person to show that the proof is not evident or the presumption not great, and there is, of course, no conclusive presumption.
In State v. Williams, supra, it is implied that while "a strong presumption of guilt" attends the indictment, countervailing proofs may be received (46 N.J. Super., at page 99).
"The tendency of the courts has been toward a fair and liberal construction rather than otherwise, of the law in determining what degree of proof or conclusiveness of presumption is sufficient to justify a denial of bail [in capital cases]." 8 C.J.S. Bail § 34, p. 56.
We must also dispose of the contention of the State that habeas corpus is not available to try the right of a prisoner to bail where the writ serves the office of an appeal. It may perhaps be conceded that the more appropriate procedure for the plaintiffs to have pursued would have been to seek leave to appeal the denial of the application for bail, having chosen a motion for bail rather than an application for habeas corpus to enforce their right in the first instance. However, we think that the assignment judge did not err in his determination that the approach of the court should be liberal in considering the application for the writ, in view of the constitutional right involved. See State v. Petrucelli, 37 N.J. Super. 1 (App. Div. 1955). Note also that N.J.S. 2A:67-14(c) permits the court in its discretion to grant the writ in capital causes, without any reference to the degree of proof involved; and N.J.S. 2A:67-1 provides: "This chapter [Habeas Corpus] shall be liberally construed so as to secure, as far as possible, the liberty of the citizen." In any event, the grave import of the constitutional question presented, from the standpoint of both the plaintiffs and *582 the public at large, justifies our consideration of the merits of the appeal without any further attention to the technical objection just discussed.
We thus address our attention to the inquiry which must be determinative on this appeal. On an indictment for murder in the form prescribed by the rules of court, there being no mention therein of degree of offense, is there a right on the part of the defendants under Article I, paragraph 11 of the Constitution of 1947, to be admitted to bail prior to conviction where there is concededly no evidence indicative of guilt of a premeditated killing such as would permit a verdict of first degree murder and a sentence of capital punishment? As it appears in Article I, paragraph 11 of the 1947 Constitution, the bail provision is identical with a forerunner in the Constitution of 1844, Article I, paragraph 10. A motion at the 1844 Constitutional Convention to exscind the phrase "when the proof is evident or presumption great" from the clause as finally adopted was defeated. Bebout, Proceedings, New Jersey Constitutional Convention of 1844, p. 157. The provision does not appear in the Constitution of 1776, but we find its substance in Laws of 1682, chapter VIII, "A Bill for the General Laws of the Province of East New Jersey," section XVI, in the following form: "That all persons arrested shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or presumption great." Leaming & Spicer, Grants and Concessions of New Jersey, 1664-1702, p. 235.
A 1698 enactment of the same Province, entitled "An Act declaring what are the Rights and Priviledges [sic], of his Majesty's Subjects, inhabiting within this Province of East New Jersey" (Leaming & Spicer, op. cit., supra, at p. 372), provides: "That in all cases whatsoever, bail by sufficient sureties should be allowed and taken, unless for treason and felony, plainly and especially expressed in the warrant of commitment, and that the felony be such as is restrained from bail by the Laws of England * * *." It is provided in the same act, however, that nothing therein contained should "infringe the liberty or privilege of any grant or *583 charter already granted," which would presumably preserve the efficacy of the 1682 act cited above.
The terminology of reference to capital offenses and to the qualification of "evident" proof and "great" presumption appears to have been extensively used throughout the colonies. It appears, for example, in laws passed at an assembly at Chester, Pennsylvania, December 7, 1682 and re-enacted in 1693, in this form: "That all persons shall be Bailable by sufficient Sureties unless for Capital Offenses, where the proof is evident or the presumption great," quoted in Quillen v. Betts, 9 Terry 93, 48 Del. 93, 98 A.2d 770, 772 (Sup. Ct. 1953).
The commentaries appended to the Code of Criminal Procedure of the American Law Institute, cited above, indicate, as of 1930, 40 states of the Union having substantially similar constitutional provisions for bail (op. cit., supra, pp. 338-341). There are varying statutory provisions in some states concerning the right of the court to allow bail in a capital case, without regard to the condition of the proofs. It would appear that New Jersey falls into the category granting such discretion to the judge through the writ of habeas corpus. N.J.S. 2A:67-14(c). (Permitting a judge in his discretion to issue a writ of habeas corpus in favor of "any person in custody or restraint of his liberty for any capital crime * * *.") It may be noted, parenthetically, that neither of the judges before whom the applications in the present case were made purported to consider whether the plaintiffs should be admitted to bail as a matter of discretion. This is not, however, presently material, since the discharge of the writ now under review searches the plaintiffs' constitutional rights, not any exercise of discretion.
An examination of the decisions in the other American states having constitutional bail provisions similar to ours, which have passed upon applications for bail by persons charged with or indicted for murder, indicates that in every jurisdiction (so far as our research discloses) which does not consider the fact of the indictment conclusive against *584 the prisoner, it is held or clearly implied that the criterion by which the determination of the sufficiency of the showing of guilt is measured on the application for bail is such behavior by the accused as will legally found a verdict permitting capital punishment. Ex parte Banks, 28 Ala. 89 (Sup. Ct. 1856); Smoot v. State, 32 Ala. App. 216, 23 So.2d 520 (Ct. App. 1945); In re Haigler, 15 Ariz. 150, 137 P. 423 (Sup. Ct. 1913); In re Losasso, 15 Colo. 163, 24 P. 1080, 1082, 10 L.R.A. 847 (Sup. Ct. 1890); State ex rel Freeman v. Kelly, 86 So.2d 166 (Fla. Sup. Ct. 1956); Ex parte Hock, 68 Ind. 206 (Sup. Ct. 1879); Lynch v. People, 38 Ill. 494 (Sup. Ct. 1865) (dictum); Ford v. Dilley, supra (156 N.W., at page 513); State v. Phillips, 118 Iowa 660, 92 N.W. 876 (Sup. Ct. 1902); Burton v. Commonwealth, 307 Ky. 825, 212 S.W.2d 310 (Ct. App. 1948); Ex parte Bridewell, 57 Miss. 39 (Sup. Ct. 1879); Ex parte Verden, 291 Mo. 552, 237 S.W. 734 (Sup. Ct. 1922); State v. Teeter, supra (200 P.2d, at page 657) (a particularly well-considered opinion); Ex parte Simpson, 37 N.M. 453, 24 P.2d 291 (Sup. Ct. 1933); Ex parte Long, 66 Okl. Cr. 254, 91 P.2d 100 (Crim. Ct. App. 1939); Application of Wyatt, 307 P.2d 172 (Okl. Crim. Ct. App. 1957); see Commonwealth ex rel. Castanaro v. Manley, 60 Pa. D. & C.R., 194, 195 (C.P. 1947) (but see Commonwealth ex rel. Condello v. Ingham, 54 Pa. D. & C.R., 253 (C.P. 1945)); Ex parte Stephenson, 71 Tex. Cr. R., 380, 160 S.W. 77 (Ct. Cr. App. 1913); Ex parte Jennings, 128 Tex. Cr. R. 610, 83 S.W.2d 334 (Ct. Cr. App. 1935); State v. Crocker, 5 Wyo. 385, 40 P. 681 (Sup. Ct. 1895).
It is not unreasonable to suppose that a constitutional bail provision which New Jersey shares with so many of her sister states, and which derives from the infancy of civil government in this country, should be regarded as serving a fundamental and commonly recognized philosophy and function. That function seems to us so obvious as hardly to require extended exposition. But since the result in the Law Division appears to us plainly discordant with the purpose of the exception set forth therein for capital *585 cases, it seems useful to refer to the exposition of the rationale for the exception set out in some of the decided cases. The purpose is, of course, to deny bail where the prisoner's assumed apprehension of being put to death if found guilty creates the hazard that he will forfeit the bail rather than forfeit his life. Where there is no such hazard bail attends even capital cases. Ex parte McAnally, 53 Ala. 495, 25 Am. Rep. 646, 647-648 (Sup. Ct. 1875); Ex parte Verden, supra (237 S.W., at page 737); People v. Dixon, 3 Abb. Prac. 395 (Sup. Ct., N.Y. 1856); State v. Crocker, supra (40 P., at page 687); Ford v. Dilley, supra (156 N.W., at page 531); Ex parte Stephenson, supra (160 S.W., at pages 77-78); 1 Bishop's New Criminal Procedure (2d ed. 1913), § 255, pp. 204-5; Orfield, Criminal Procedure from Arrest to Appeal (1947), p. 109. The rationale is well expressed in Ford v. Dilley, supra (156 N.W., at page 531). Bishop (ubi cit., supra) states it (but in stronger terms than required by the Constitution) in this manner:
"The danger of escape is the only just ground for denying bail to one accused of any crime, yet not convicted. But something of such danger exists in every case, and it increases with the severity of the punishment and the probability of a conviction. Always, therefore, these two elements should, in combination, be taken into the account on the questions of accepting bail and the amount. And where the probabilities of flight are overwhelming, there should be no bail. Thus, a capital crime, with guilt and conviction certain, is of this sort, for, in the language of Scripture, `All that a man hath will he give for his life.'" (Emphasis supplied)
In State v. Crocker, supra, the matter is reasoned thus (40 P., at page 687):
"It must be borne in mind that our laws are intended to be framed upon the humane idea that no man is to be punished until he has been convicted; that an accused is only confined in jail before trial and conviction to secure his presence at the trial, and, if convicted, that he may be compelled to undergo sentence; that, however, if by sureties his presence can as well be secured, it is deemed wise and just that he shall, until trial and conviction, be allowed his liberty, except in capital offenses, where the proof is evident or the presumption great, in which cases it is deemed that the offense is so grave it is not safe to allow the presence of the accused to be secured by bail."
*586 In Ford v. Dilley, supra, the court discusses one of the views of the sufficiency of the evidence on the application for bail (156 N.W., at page 531):
"Self-evidently this is no inquiry into whether the jury will be sustained if it do impose the death penalty, but whether the evidence is not such as that it is improbable it will impose the penalty, even if sustainable in doing it, or is not so strong as to make the accused feel that his execution is inevitable."
There is, of course, no sensible basis for conceiving that this obvious purpose of the limitation of the absolute right of bail commonly found in state constitutional provisions was less significant in New Jersey than in the other states which wrote it into their several bills of rights. Any construction of the provision which fails to give effect to the indicated rationale for the exception in capital cases by denying bail in a case where that philosophy is not relevant or operative becomes an unjustifiable impairment of a basic constitutional right.
It is true that in the great majority of American jurisdictions the local statutes permit and the practice is followed of indicting for murder in the first degree, rather than, as in New Jersey, for murder without specification of the degree. Thus in most of the cases cited hereinabove for the proposition that the constitutional bail provision permits a denial of bail in a murder case only where there is no evident proof (in the varying degrees required in different states) that a verdict punishable by death may eventuate from the trial, the indictment was for first degree murder. In none of the cases so holding, however, do we find the argument against bail asserted that because the jury may return a verdict of second degree murder on the evidence adduced, the bail should be denied. It is no answer to say that in those jurisdictions murder in the two separate degrees is considered two separate crimes (with the corollary that only the higher is a capital offense), since the New Jersey rule of State v. Brown, supra, that murder is a single offense, the division into degrees being only for purposes of punishment, *587 appears to be a general conception, not one peculiar to New Jersey. Thus, in Iowa, where the leading decision of Ford v. Dilley, supra, was handed down, we find asseverated by the court, in State v. Woodson, 244 Iowa 1262, 59 N.W.2d 556, 558 (Sup. Ct. 1953), certiorari denied 347 U.S. 907, 74 S.Ct. 433, 98 L.Ed. 1065 (1954), in language paralleling what our Supreme Court said in State v. Brown, supra: "There is but one crime called murder. The degrees of this offense are not distinct crimes but afford means of permitting punishment according to the gravity of the criminal act." This concept, be it noted, antedated Ford v. Dilley, supra. See State v. Phillips, supra (92 N.W., at pages 877-878).
Thus, also, in Pennsylvania, where the view is held, conformably with the general rule, that the constitutional provision requires admission to bail unless the proof indicates the possibility of conviction on the charge of murder in the degree punishable capitally, see Commonwealth ex rel. Castanaro v. Manley, supra (60 Pa. D. & C.R., at page 195), we find that the homicide statutes are in substance the same as ours. Murder is charged generally, without specification of degrees, 19 Purdon's Penna. Stats. Annot. (1945), § 351. As in New Jersey, too, the jury has the power, and it is its duty, to ascertain the degree of murder. Commonwealth v. Morrison, 266 Pa. 223, 109 A. 878 (Sup. Ct. 1920). As to the sufficiency of an indictment in the statutory form to charge the crime, see Commonwealth v. Sallade, 374 Pa. 429, 97 A.2d 528 (Sup. Ct. 1953).
The Code of Criminal Procedure of the American Law Institute, cited supra, clearly subscribes to the view that under such a constitutional provision as ours, and where the crime of murder is divided into degrees for purposes of punishment, bail may not be denied unless the proof is evident of guilt in the highest, or capitally punishable, degree or grade. Chapter 3 of the Code deals with bail (p. 41). Section 65 (idem) defines "a capital offense" as used in that chapter as "an offense which, under the law existing at the time of its commission, and at the time of the application *588 to be admitted to bail, may be punished by death." Section 67, in the form prescribed for application in those jurisdictions having constitutional bail provisions like those of New Jersey (p. 42, footnote), reads as follows:
"A person in custody for the commission of a capital offense shall, before conviction, on applying for admission to bail, be admitted to bail as of right, unless the proof is evident or the presumption great that he is guilty of the offense, or if the offense is divided into degrees, that he is guilty in the degree which may be punished capitally."
Thus, reading sections 65 and 67 of the Code together, we find that they call for the grant of bail in a case like that at bar, entirely consistently with the concept of State v. Brown, supra, that murder is a single crime and classifiable as a capital offense because potentially punishable by death. It is entirely accurate to say that "the offense is divided into degrees" in New Jersey, within the fair meaning of the Code, section 67, since the division into degrees by our statute, N.J.S. 2A:113-2, although only for purposes of punishment, State v. Brown, supra, is nevertheless a division in the sense which has relevance for the expressly stated purpose of section 67 (viz., "or if the offense is divided into degrees, that he is guilty in the degree which may be punished capitally"). The relevance of the division of the offense into degrees for purposes of punishment, to the problem before us is, quite obviously, that the previously discussed policy of the constitutional provision for guarding against bailjumping by prisoners afraid of the death penalty becomes implicated only where the preliminary proofs support the hypothesis of the possibility of a sustainable conviction of murder in the first degree.
The disparity between the fundamental policy underlying the exception for capital cases in the constitutional provision for bail and the practical operation of the rule pronounced by the Law Division in the present case is striking. A moment's reflection makes it manifest that the stated constitutional policy never becomes a determinative factor *589 under that rule in favor of the prisoner. It only operates in favor of the State. If, as the Law Division held in discharging the writ, all that the State needs to show in order to defeat the application for bail in a murder case is that there is proof supporting a conviction of the defendant of murder in the second degree, for which the punishment is no more than 30 years' imprisonment, it obviously follows that the court before which bail is sought need never answer the question as to whether there is proof which will support a conviction of murder in the first degree, for which the penalty may be death. Even if, on such an application, the court finds that there is no proof which would support a conviction of murder in any degree, and therefore allows bail, it is manifest that the critical determinant is not the absence of evidence which would permit a verdict of murder in the first degree, but rather the lack of evidence to support a verdict in the lesser degree, which is not punishable by death. The basic factor of fear by the prisoner of the death penalty thus plays no part on the bail application, except where, the court finding evidence of first degree murder, it applies in favor of the State.
Thus, under the rule espoused by the State, the obvious policy underlying the exception to the right of bail in capital cases where "the proof is evident or presumption great" is obliterated and the effect of the constitutional guarantee becomes altered so that bail is denied, not upon the rationale that a prisoner fearing the imposition of the death penalty will forfeit bail, but that one fearing punishment by a maximum prison term of 30 years will do so. The resulting metamorphosis in the constitutional provision would turn New Jersey into a virtual minority of one among the states of the Union which have such a provision and do not treat the indictment as conclusive against the prisoner.
It should also be kept in mind, in appraising the practical effect of the rule argued for by the State, that since, as noted above, New Jersey grand juries do not indict for first degree murder, but only for murder generally, the prisoner could practically never get the benefit of the rationale for *590 the constitutional exception discussed above. He could hope for bail only where the proofs of the State did not rise above manslaughter, and it is not likely that in the average case the judge would weigh the evidence in favor of the prisoner applying for bail on the distinction between second degree murder and manslaughter. (The present case may be an apt illustration.) It has, moreover, been pointed out in some of the cases that prosecuting attorneys are often prone to seek indictments for the highest degree of homicide, knowing that these will support convictions for the lowest. See a number of such animadversions collected in Ford v. Dilley, supra (156 N.W., at page 522) ("the degree of the charge is usually a mere matter of trial policy determined on by the prosecutor, and not a judicial finding").
A study of the authorities relied upon by the State and the trial judge reveals that they do not support the denial of bail here.
The primary reliance is upon State v. Brown, supra. It was there held that murder was an offense "punishable with death," for purposes of the statute of limitations, N.J.S. 2A:159-2, which provided that, except for offenses punishable with death, the period of limitations for crimes was two years (later fixed at five years). The court held that the exception was applicable notwithstanding that the conviction of the defendant in the particular case was of murder in the second degree. It is obvious that, for purposes of a statute of limitations, the character of an offense must be fixed by what is recited in the indictment, since the finding of the indictment tolls the applicable period. The consequent holding of the court that an indictment for murder is an indictment for an offense "punishable with death" because the indictment may result in a first degree conviction punishable with death is of no precedential value in the instant case wherein it is conceded that murder, generically, is a capital offense within Article I, paragraph 11 of the Constitution, but where it is equally apparent that the exception for capital offenses where the proof is evident or the presumption great can have relevance in the constitutional *591 rationale only to proof of guilt of behavior legally supportive of a verdict for punishment by death.
State v. O'Leary, 110 N.J.L. 36 (E. & A. 1933), held that in the trial of a murder indictment the jury should have been sequestered, since the indictment charged a capital offense, and it was immaterial that the verdict returned was guilt of second degree murder. Here again the only question was whether a murder indictment is properly classifiable as being for a capital offense.
In State v. Barone, 96 N.J.L. 374 (Sup. Ct. 1921), appeal dismissed sub nom. In re Barrone (sic), 97 N.J.L. 249 (E. & A. 1922), it was held that upon a conviction of murder in the first degree, notwithstanding there was a recommendation of life imprisonment, bail pending appeal was not allowable under a statutory provision precluding bail to appealing defendants in "capital cases." The ratio decidendi was that upon a retrial after reversal the defendand might be found guilty of murder in the first degree without recommendation, so that the case remained potentially terminable with a death penalty. This decision was followed in State v. King, 106 N.J.L. 338 (E. & A. 1930). Here again the question was merely one of classification of the offense. Of the same purport is State v. Leo, 34 N.J.L.J. 340 (O. & T. 1911), notwithstanding that the conviction there appealed was of murder in the second degree. It must be conceded that where the only question in a particular case is whether murder is to be classified as a capital case or offense, the answer must be in the affirmative until the final disposition of the indictment. See also, to the same effect, State v. Magonia, 44 N.J. Super. 89 (App. Div. 1957), and State v. Pontery, 19 N.J. 457 (1955).
It thus becomes manifest that none of the foregoing decisions militate against the rights of the plaintiffs to bail under the constitutional mandate in the facts of this case. In each one of those cases the sole question was whether a murder case was classifiable, as a matter of definition, as a capital case or cause, or as one in which the death penalty could be imposed; and in every case the answer was in *592 the affirmative because there remained the possibility that before the final disposition of the indictment, either in the pending trial or appeal, or upon a retrial after reversal of a conviction, a verdict calling for punishment by death might be returned. For purposes of the legislation or rules of law involved in each of the cases cited, it was immaterial that the likelihood of ultimate capital punishment was slight. The mere possibility froze the classification. But it must not be forgotten that the classification as capital depended absolutely on the possibility of imposition of the death penalty, not of any lesser imposition.
In dealing with Article I, paragraph 11, on the other hand, the essence of the exception to the guarantee of bail is the degree of probability of guilt of the capital offense, i.e., where the "proof is evident" or the "presumption great." We are not in this case, for reasons already stated, concerned with the meaning and application of the terms just mentioned, considered in relation to the problem of degree of proof or burden of proof. But two things are vitally significant, for purposes of Article I, paragraph 11. (1) The mere possibility of a death sentence is not controlling, as it is in the cases relied upon by the State, where the only inquiry is one of classification of the offense. When the Constitution refers to capital offenses in which the proof is evident or the presumption great as not bailable as a matter of right, it has in mind that unless the specified degree of likelihood of conviction upon trial appears, the defendant has an absolute right of bail. (2) But the ultimate event to which the postulated probability is related, remains, even as in the above-mentioned cases where a mere theoretical possibility suffices, the imposition of the punishment of death as a result of the trial. Thus, any legal conclusion which would deny bail because the "proof is evident," etc., of guilt of conduct punishable only by imprisonment for no more than 30 years (second degree murder) subverts the obvious sense and intent of the reference to "capital" in the constitutional provision.
*593 Article I of the Constitution is designated "Rights and Privileges." So was Article I of the Constitution of 1844. It constitutes that portion of the Constitution popularly denominated the State Bill of Rights, the repository of those rights most cherished and zealously guarded by the delegates of both constitutional conventions. Paragraph 11, with which we are here concerned, is followed by a companion prohibition against the requirement of excessive bail, Article I, paragraph 12. Arbitrary or unreasonable restrictions and denials of bail were typical examples of the invasions of personal liberty by the British Crown which the American colonists found intolerable to the point of revolution. Considering that bail, as a mechanism by which we ensure the presence of the defendant at the trial, gives "full fealty to the basic principles of freedom, inherent in our system, that an accused is presumed to be innocent until his guilt is established by the evidence beyond a reasonable doubt," and that it "reconciles a sound administration of justice with the rights of the accused to be free from harassment and confinement, unhampered in the preparation of his defense and not subjected to punishment prior to conviction" (Dudley v. United States, 242 F.2d 656, 659 (5 Cir. 1957)), our own constitutional provision and its exception in capital cases ought to be accorded reasonably liberal interpretation, in harmony with both its language and its evident purpose and policy.
The judgment has been reversed and the plaintiffs directed to be discharged from custody in such reasonable bail as might be fixed by the assignment judge or his designee.