In re Losasso et al.

1. Policy of the Criminal Law in Respect to Punishment of Offenders.— The legal penalty for crime is inflicted only upon conviction, and the object of imprisonment before trial is safe-keeping, not punishment.

2. Bail in Felonies, when an Absolute Right.— Section 19 of the Bill of Rights abrogates the common-law rule as to felonies by making bail after indictment and before trial, in all cases not capital, a matter of absolute right.

3. Modification of Common-Law Rule in Capital Cases.— This constitutional provision further modifies the common-law rule by providing, in effect, that in capital offenses also, even after indictment, if upon investigation it is found that the "proof is not evident or the presumption great," bail should be allowed.

4. Grades of Crime Included in Indictment for Murder in First Degree.— Every indictment for murder in the first degree charges three subordinate grades of crime, each of which is unquestionably bailable.

5. Presumption Created by Indictment for Capital Offense.— The indictment, however, creates a strong presumption that the prisoner is guilty of the capital offense. And courts must proceed with extreme caution in exercising the power of admitting to bail. Where the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right.

6. Applications Must Usually Be Made to Subordinate Tribunals for Relief Grantable by Them.— The supreme court, except in case of some extreme emergency, will not entertain proceedings for original relief when such relief may be granted by a subordinate tribunal.

*Original Application for Habeas Corpus.*

It is alleged, among other things, in the petition that Genaro Losasso and Gaetano Losasso are held in custody by the jailer of Arapahoe county upon a pretended indictment charging them. with murder in the first degree; that they "are not guilty of any crime or offense against the laws of this· state," and their imprisonment is illegal and unconstitutional. It is also averred that, though· consid-

erable time will elapse before trial can be had upon the pretended indictment, the district court refuses to entertain a motion for bail. The present application to the supreme court is made for the purpose of securing a hearing and favorable action upon the question of bail.

Mr. Edgar Caypless, for petitioner.

Mr. H. Riddell, *amicus curiæ.*

Chief Justice Helm delivered the opinion of the court.

The question now presented for consideration is whether or not one charged with murder of the first degree, the punishment for which offense is death, may be admitted to bail after indictment and prior to trial. The practice in the different courts of the state with reference to this subject is not uniform. The present judges of the second judicial district, where petitioners are held in custody, are of opinion that the indictment is conclusive against the right to bail, and therefore decline to consider any application therefor. On the other hand, the judges in most, if not all, of the remaining districts frequently entertain such applications, hear evidence thereon, and occasionally admit to bail. In view of these conflicting opinions and inconsistent holdings, it is important that a definite rule should be announced, so that the procedure in the premises may be uniform throughout the state.

It is difficult to determine precisely what the common-law rules on the subject of bail were when provisions, such as will be hereafter considered and are now made constitutional, were first adopted in this country. Mr. Blackstone says: "It is agreed that the court of king's bench (or any judge thereof in vacation) may bail for any crime whatsoever, be it treason, murder, or any other offense, *according to the circumstances of the case.*" Book 4, ch. 22, p. 299. And he mentions no exception predicated upon the finding of an indictment. But it seems to be well settled that the

court of king's bench, as a matter of course, refused bail in all capital cases after return of a true bill, unless some special circumstance, usually arising subsequent to such return, supervened; also, that in no felony, after indictment, was bail regarded or allowed as a matter of right. The foregoing practice of the court of king's bench, in relation to capital offenses, has become a fixed rule in California, Louisiana, New York, Iowa and North Carolina. It is held in those states that after indictment for a capital felony the presumption of guilt is so strong as to be conclusive against admission to bail. *State v. Mills*, 2 Dev. & B. 552; *Hight v. United States*, 1 Morris (Iowa), *407; *Territory v. Benoit*, 1 Mart. (La.) 142; *People v. McLeod*, 1 Hill, 377; *People v. Tinder*, 19 Cal. 539.

We have only discovered two cases in the federal courts directly upon this question, viz., *United States v. Jones*, 3 Wash. C. C. 224, and the celebrated trial of Aaron Burr for treason. In the former case Jones, one of the defendants, was admitted to bail upon the ground of illness; but as to Reese, another of the defendants, Mr. Justice Washington disposes of the application, without argument, in the following language: "The bill of indictment being found, we do not feel ourselves at liberty to inquire into the evidence against it." Upon return of the indictment against Aaron Burr, application for bail was made to Chief Justice Marshall, who presided throughout the trial. The learned chief justice remarked (see page 94) that he "had never known a case similar to the present when such an examination had taken place." He also insisted "upon the necessity of producing adjudged cases to prove that the court could bail a party against whom an indictment had been found." But on page 95 he is represented as saying: "I have only stated my present impression. This subject is open for argument hereafter." Mr. Burr was thereupon committed to jail, and whether subsequently any authorities were cited or arguments heard upon the question we are not advised. No ruling thereon, or further reference thereto, appears in the

volume. It is a significant circumstance that there was at this time (A. D. 1807) in Virginia, where Burr was tried, no such constitutional provision on the subject of bail as now exists in this and other states. In *United States v. Stewart*, 2 Dall. 343 (A. D. 1795), upon this question, language is used which seems to concede the possibility of an examination for admission to bail in such cases; but the point was not necessarily involved, and the decision cannot be considered authority.

Precedents from the federal courts upon the subject in hand thus appear to be extremely meager and unsatisfactory; but, so far as the federal cases go, they point to a sanction of the common-law rule.

The supreme courts of the following states, however, have promulgated a different doctrine: Alabama, Arkansas, Florida, Illinois, Indiana, Mississippi, Ohio, South Carolina and Texas. The view adopted in these states is that the indictment, even in capital cases, is simply presumptive evidence of the guilt of the party charged, and that courts should, upon application, hear proofs, and, if the presumption be overcome, admit to bail. *Ex parte Hammock*, 78 Ala. 414; *Ex parte White*, 9 Ark. 222; *Thrasher v. State*, 26 Fla. —; *Lynch v. People*, 38 Ill. 494; *Ex parte Kendall*, 100 Ind. 599; *Street v. State*, 43 Miss. 1; *State v. Summons*, 19 Ohio, 139; *State v. Hill*, 3 Brev. 89; *Yarborough v. State*, 2 Tex. 519.

Each of the foregoing lists of cases from the state courts might be largely augmented by other decisions of the same tribunals; but, as the opinions referred to express what is believed to be the law at the present time in the states mentioned, additional citations therefrom are deemed unnecessary.

Although the above reference to adjudicated cases shows contrariety of judicial opinion on the subject before us, it may fairly be said that the preponderance of authority in this country is against the common-law doctrine. And we think this preponderance of authority is more in harmony

with the policy and purposes of modern constitutional and legislative action.

It must be borne in mind that the legal penalty for crime is inflicted only upon conviction, and that the object of imprisonment before trial is safe-keeping, not punishment. If the presence of the accused for trial could be otherwise assured, imprisonment would doubtless be entirely dispensed with. So anxious were the framers of the constitutions, state and federal, to guard against abuses in this direction that they prohibited the exaction of " excessive bail; " *i. e.*, more than will be reasonably sufficient to prevent evasion of the law by flight or concealment. It is likewise to be remembered that trial does not and cannot, as a rule, so speedily follow presentment, in this and other rapidly growing western commonwealths, as in England, where the common-law doctrine under consideration had its origin.

Most, if not all, of the state constitutions, now contain provisions substantially similar to section 19 of our Bill of Rights, which reads as follows: " That all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident, or the presumption great." It will be observed that this constitutional provision is entirely silent as to the *status* of the prosecution. It does not say that *upon indictment* for a felony, or for a particular kind of felony, the beneficent privilege conferred is withdrawn. On the contrary, its terms are broad enough to include persons accused of any crime whatever, *after as well as before indictment.* The only exception expressly made has reference to capital offenses, but this exception is wholly inoperative if the proof of guilt be not evident, and the presumption great. Had the framers of the constitution intended to provide that the indictment should be conclusive in capital cases, they would, in all probability, have said so. A simple declaration to this effect would have avoided all doubt and embarrassment.

We must look outside of the language employed in the constitution for authority sustaining the position that in

*any case* the indictment alone is conclusive against the prisoner's right to bail. The view affirming such conclusiveness is doubtless drawn by supposed analogy and precedent from the common law. But it is universally conceded that the constitutional provision, in effect, though not in words, changes the common law so as to confer an absolute right to bail after indictment in all other felonies. Proofs may be required in determining the amount of bail, but the right thereto is no longer a matter of judicial inquiry or discretion. Is it not equally reasonable, and equally in harmony with established rules of construction, to suppose that a change was also intended in the character of the presumption furnished by the indictment in capital cases? If the common-law rule is so relaxed that what was formerly, at most, a matter of judicial discretion is now a matter of absolute right, may it not be that that which formerly constituted a conclusive presumption should now be regarded as *prima facie* proof only? The language of the exception itself would seem to sustain this conclusion. It clearly implies an investigation by some tribunal into the sufficiency of the proofs. Bail as a matter of right is denied; but, when some competent authority ascertains by inquiry that the proof is not evident and the presumption not great, its allowance is imperatively commanded. That the tribunal, or authority possessing the power of admitting to bail, should make this inquiry, is not an unreasonable deduction.

Two principal grounds are mentioned for the view that in capital cases upon return of the bill bail must be denied without investigation. The first, being the one relied on in the English decisions, is thus clearly given by the court in *Lord Mohun's Case*, 1 Salk. 104: "If a man be found guilty of murder by the coroner's inquest, we sometimes bail him, because the coroner proceeds upon depositions taken in writing, which we may look into; otherwise if a man be found guilty of murder by a grand jury, because the court cannot take notice of their evidence, which they,

by their oath, are bound to conceal." The second ground is briefly stated in *People v. Hyler*, 2 Park. Crim. R. 570, as follows: "Because to open the whole question of guilt or innocence to proof in an action to admit to bail would be attended with the most serious inconvenience." Both of these objections are forcible, and would, under different circumstances, doubtless be worthy of grave consideration. The first is based, however, upon the established practice of the English courts of limiting the examination for bail to a review of evidence taken before the committing tribunal. No such practice is required by the constitutional provision under consideration; nor, so far as we are advised, is it generally adhered to by the courts of this country. The second objection is more serious, and, if the courts possessed entire freedom of action in regard to the matter, would be very persuasive. The regular trial is, to a limited extent at least, anticipated. While the guilt or innocence of the accused is not to be determined, the quantity and character of the proofs on this point are, for the special purpose in hand, necessarily considered. Occasionally much time is thus consumed, and the court's attention is correspondingly diverted from other business. But these objections cannot avail against a positive constitutional command; if the constitution requires the court to determine for itself whether or not the proof is evident or presumption great in a given case, all considerations of expediency or convenience, however potent they might be at the common law, must give way.

The English cases, and the American cases adopting the English rule, all concede the right to be heard upon an application for bail after commitment by a coroner's inquest or an examining magistrate. The character and scope of the inquiry are in many instances circumscribed, yet the right to be heard is nevertheless unquestioned. But, under our practice, it would ordinarily accord more nearly with justice to hold the finding of a coroner's inquest or a committing magistrate conclusive as to the clearness of guilt,

than the report of a grand jury. In the former cases the accused may appear in person and by counsel. He may be heard in argument, may produce evidence, and make his own statement. But the proceedings of a grand jury are inviolably secret and wholly *ex parte*, evidence for the state being alone received. The accused is not present, and in many instances is ignorant of the fact that charges against him are being considered. He cannot be represented by counsel, or be heard upon the legality or bearing of the evidence adduced. The officer employed by the state to prosecute exercises a large influence in the selection of witnesses to testify; gives the only legal advice, unless the court be called upon; and usually directs to a considerable extent the entire proceeding. The rule that the proof of guilt thus offered and weighed should be *pro forma* treated as "evident," and that the presumption thus arising should in the same manner be pronounced "great," is largely a legal fiction. It finds little support in reason.

Moreover, every indictment for murder in the first degree includes several lesser offenses. Under it the accused may be convicted of murder in the second degree, or of voluntary or involuntary manslaughter. In legal effect, therefore, every such indictment charges four crimes, three of which are unquestionably bailable. To deny the latter proposition would as plainly violate the constitutional mandate as to refuse bail where crimes against property are the subject of accusation. Why should the prisoner not be permitted to show, if he can, that his offense belongs to one of the lower grades? The presumption treated in some cases as conclusive, that the grand jury would not have returned a bill for the higher grade if the evidence pointed more clearly to one of the lesser offenses, does not rest upon a very substantial foundation. It is a fact that prosecuting officers, actuated by motives of policy, generally endeavor to procure indictments for the higher rather than for either of the lesser grades of homicide. An indictment for murder is, not without reason, supposed to render a conviction

of manslaughter more certain. On the other hand, under the charge of manslaughter, a conviction for murder would be impossible; yet the evidence adduced at the trial may greatly exceed in strength that upon which the indictment was found, and fully warrant such conviction. In theory, these considerations should have no weight either with the prosecutor or grand jury; but in practice, we know that they often turn the scales in favor of the graver accusation.

As already intimated, certain exceptions to the common-law rule in relation to bail in capital cases are recognized, even where this rule prevails most rigorously. Among these exceptions may be mentioned serious illness of the prisoner; delay by the prosecution in bringing him to trial; consent of the prosecuting attorney to the taking of bail; the existence of public excitement at the time of the finding of the indictment, likely to prejudice the grand jury; the confession of another that he did the killing, and the like. These exceptions are, in the main, prompted by considerations of actual or probable hardship. Courts sometimes exercise a sound judicial discretion, and admit to bail in such cases, even when the proof appears to be evident or presumption great. But it occasionally happens that by means of malicious or of prejudiced or perjured testimony, or upon wholly insufficient proofs, indictments are procured charging the crime of murder, and a long period must elapse before a trial can be had. The same promptings of humanity, reinforced by strong considerations of justice, would also sanction the hearing of proofs on the question of bail, where such matters, or some of them, are alleged as a ground of the application.

In our judgment, the foregoing considerations warrant the view that the absolute conclusiveness of the indictment as to guilt in capital cases should not be assumed.

Courts must, however, proceed with extreme caution in exercising the power of admitting to bail in this class of offenses. And, whenever bail is allowed, it must be reason-

ably sufficient to secure the prisoner's presence at the trial. When life is suspended in the balance the temptation to avoid trial is, in most instances, peculiarly great: and a release upon bail should not be permitted, unless the court feels clear that the constitutional exception does not apply. The indictment creates a strong presumption that the prisoner is guilty of the higher crime and not entitled to bail. The burden of overcoming this presumption is cast upon him. This burden should be so discharged as to satisfy the following test laid down in *Ex parte McAnally*, 53 Ala. 495: "If the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right." By the concluding clause the learned judge undoubtedly means that bail should be denied in the absence of some special ground such as those above mentioned, wherein all courts exercise a judicial discretion. The foregoing criterion is not beyond criticism, nor is it possible to frame one that would be; but all things considered, it is more satisfactory than either of the others suggested. Judicial action, under any rule in the premises, will always be accompanied by embarrassment and perplexity; but with a careful, conservative and fearless exercise of judgment in weighing the proofs, and of discretion in fixing the amount of bail, it is believed the rights of the prisoner and interest of the public will be sufficiently guarded.

It is an invariable rule of this court, in the absence of some extreme emergency, not to entertain proceedings for original relief when such relief may be granted by a subordinate tribunal. The public as well as the private interests confided to our care render the adoption and enforcement of this rule a necessity. The district court of Arapahoe county, where petitioners are imprisoned, possesses such jurisdiction in the present case, and doubtless in pursuance

of the views above announced, will, notwithstanding its former practice, make the desired inquiry. We shall, therefore, for the present, decline to issue the writ of *habeas corpus* or enter into the investigation that would follow.

*Writ denied.*