**Melvin DAY et al., Appellants,**

**v.**

**William CAUDILL, Jailer of Perry County, Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 15, 1957.

John Y. Brown, Lexington, for appellants.

Jo M. Ferguson, Atty. Gen., John B. Browning, Asst. Atty. Gen., Emmett G. Fields, Commonwealth's Atty., Whitesburg,

Scott Duff, D. G. Boleyn, Hazard, for appellee.

MONTGOMERY, Judge.

Melvin and Ed Day have appealed from an order of the Perry Circuit Court dismissing their petition for a writ of habeas corpus. The appellants were indicted jointly for the murder of Jack Fields. Their motion for admission to bail was denied by the court after hearing evidence. This habeas corpus proceeding was instituted to review the denial of bail. Smith v. Henson, 298 Ky. 182, 182 S.W.2d 666; Wells v. Commonwealth, 299 Ky. 51, 184 S.W.2d 223; Burton v. Commonwealth, 307 Ky. 825, 212 S.W.2d 310. A previous effort to obtain bail for one appellant was unsuccessful. Day v. Skinner, Ky., 300 S.W.2d 48.

The writ of habeas corpus is a constitutional protection against illegal restraint. United States Constitution, Article I, Section IX; Kentucky Constitution, Section 16. The purpose of the habeas corpus proceeding is to regain the liberty of a person who is being illegally restrained. As such, it has been used to regain the custody of a child, to attack a void criminal judgment, and to obtain bail. The writ should be issued upon a showing of probable cause to believe that a person is detained without lawful authority or is imprisoned when by law he is entitled to bail. Criminal Code of Practice, Section 399. Appellants seek relief under the latter provision

The right to bail is a constitutional one, which has been safeguarded. Excessive bail is denounced. Kentucky Constitution, Section 17. It is provided that all prisoners are entitled to bail "unless for capital offenses when the proof is evident or the presumption great". Kentucky Constitution, Section 16.

This section has been construed to mean the proof of guilt is evident or the presumption of guilt is great. Common-

wealth v. Stahl, 237 Ky. 388, 35 S.W.2d 563. It was held in the Stahl case that the accused is entitled to the presumption of innocence at all times and for all purposes after he is charged and the burden of proof on a motion for bail in a capital offense is on the Commonwealth. Burton v. Commonwealth, 307 Ky. 825, 212 S.W.2d 310; Duke v. Smith, Ky., 253 S.W.2d 242; Smiddy v. Barlow, Ky., 288 S.W.2d 346.

To determine whether there is evident proof or a great presumption of the guilt of Melvin and Ed Day, it is necessary to review the testimony at the hearing on the motion for bail.

Jack Fields, a deputy sheriff, was shot with a pistol about 8 o'clock at night on November 10, 1956. The shooting took place near Wooten's, a combined restaurant and "beer joint", which was located astride the county line between Perry and Leslie counties. The record does not show in which county Fields served as an officer. He was wounded and fell in Leslie County. On the way to the hospital in Hazard, it was discovered that he was dead. No decision is made at this time as to whether Fields died in Perry or Leslie County.

Elbert Smallwood, a Leslie County deputy sheriff, was the only witness introduced by the Commonwealth who testified concerning the shooting. His statement as to how Fields was shot is as follows:

"Well, Ab Wells and myself—Albert Wells and myself drove up to the top of the hill, and they was a car drove over towards the Perry County side, and it was Jack Fields and his two or three deputies—I don't know—I guess they was about three of them altogether. I spoke a word or two to Jack. Jack says 'they's some men standing up there in the Leslie County side'. 'I don't know', he says 'whether they was anybody drinking or not'. Well, I told him, I said 'I'll get out and walk up that way and see if they's anything going on'. Albert Wells and myself got out of the car, and Jack Fields got out of his car. We walked along side by side—I guess—I don't know just how far—maybe fifteen or twenty steps, I wouldn't know exactly —anyway, we walked up in about—I guess Jack Fields was the closest man to Ed Day and the boy, his son, Melvin. Jack Fields said 'hello Ed',—Ed's pistol fired into Jack's body.

"Q. 26 About the same time that he said 'hello Ed'? A. He said 'hello' and the pistol fired."

Smallwood further stated that Melvin Day also started firing a pistol immediately. He said that Fields "never touched his pistol" but Melvin took Fields' pistol from his hip holster. He testified that Fields had not done anything to either of the appellants and that Melvin had said nothing to Fields before the shooting. Smallwood said he saw a bullet wound in the chest of Ed Day, and admitted firing five or six times toward the appellants.

Ed Day had purchased some beer and placed it in his truck. Just before the shooting, he was standing beside the truck, waiting for Melvin and Lillie Wells. He said that the shooting occurred as follows:

"Well, I was standing down there by the side of my truck, and Jack come up, and he said 'Ed' said 'let's go to jail.' I says 'well, what 'fer Jack.' He said 'don't ask me what 'fer', said 'I'll kill 'ye.' When he said that— when he said 'I'll kill ye', he 'jobbed' me right there, (indicating), with the point of the gun and he shot me right square through. Well, I went down on my knees, and I got back up and I 'rech' through the window of my truck—the window was broke out of it, and I 'rech' in there and got a forty-five automatic, and I turned around and shot Jack."

Ed said that after he got to his feet Fields hit him with a pistol, or something,

**48**

before he obtained his pistol from the truck. He shot Fields three or four times. Ed was wounded four times. He named Smallwood, two others, and Fields as having engaged in the shooting at him. Ed further testified that there were powder burns on his jacket and shirt. There had been no previous trouble between Ed and Fields. The presence of the gun was explained by Ed's statement that he was a state forest warden and authorized to carry a weapon. Melvin Day had no pistol but obtained Fields' gun after Fields fell.

Ed Day's testimony concerning the circumstances of the shooting was corroborated in substance by the testimony of Melvin Day, Anna Lee Shell, a fourteen-year-old girl, and Lillie Wells, Ed's son-in-law. Lillie had been arrested for drunkenness by Jack Fields prior to the shooting and was seated in a car with another officer at the time of the shooting.

A doctor's affidavit as to Ed Day's condition was submitted for consideration at the hearing. He had examined Ed about a month after the shooting. He found that Ed Day had sustained a serious gunshot wound in his chest, his condition was very painful, and he needed specialized medical treatment, possibly surgery. He further stated that unless such treatment was provided immediately Day might lose the use of his left lung, proper medical facilities were unavailable in jail, and failure to receive immediate treatment would endanger his life.

██ The burden of proof was on the Commonwealth to establish evident proof of appellants' guilt or to establish a great presumption of their guilt. Each case·must stand on its own facts. The proof offered in the face of the presumption of innocence is not sufficient to warrant a denial of the constitutional right to bail. Damron v. Coleman, Ky., 270 S.W.2d 170.

This opinion is delivered following our order of February 26, 1957, holding that the appellants were entitled to bail and directing the judge of the Clark Circuit Court, to which court the case had been transferred for trial, to admit appellants to bail in a reasonable amount.

Judgment reversed.