THE PEOPLE OF THE STATE OF NEW YORK ex rel. SALVATORE CALASCIONE and JOSEPH VITO, Respondents, *v.* THOMAS RAMSDEN, as Warden of Nassau County Jail, Appellant.

Second Department, December 30, 1963.

*William Cahn, District Attorney (Henry P. De Vine* of counsel), for appellant.

*James G. Blake (John Chamberlain* of counsel), for Salvatore Calascione, respondent.

*George V. Fleckenstein (John Chamberlain* of counsel), for Joseph Vito, respondent.

*Per Curiam.* The basic issue to be determined on these appeals is whether, under all the circumstances which were here disclosed to the Trial Judge at the opening of the trial of a criminal action, he abused his discretion by revoking the $50,000 bail of each of the two defendants (Calascione and Vito, the relators here) under which they had been at liberty, and by remanding them to jail pending the trial.

The material facts are undisputed; it is only the question as to the proper inference to be drawn therefrom which gives rise to the difference of opinion.

On February 15, 1963, in the County Court of Nassau County, a superseding indictment was filed against 10 defendants, comprising the two relators; one, Austin P. Hagewood;* one, Kelly

Kay Hagewood;* and six others.* The indictment charged all the defendants with the commission of the following crimes: (1) conspiracy to commit a crime, as a misdemeanor, in violation of section 580 of the Penal Law; (2) conspiracy to commit extortion, as a felony, in violation of section 580-a of the Penal Law; (3) carrying and possessing an explosive substance in violation of subdivision 2 of the then section 1897 of the Penal Law [since repealed and superseded by Penal Law, § 1897, subds. 1, 6; L. 1963, ch. 136, eff. July 1, 1963]; and (4) carrying and possessing an explosive substance in violation of the local ordinance of the Town of Oyster Bay.

With respect to the relator Calascione only, the indictment further charged him with four counts of extortion and four counts of coercion.

The indictment arises out of an alleged conspiracy among the various defendants for the purpose of (a) organizing a Long Island Barbers Guild; (b) increasing and fixing the prices to be charged; (c) dynamiting the shops of those barbers who refuse to join the guild and to subscribe to its illegal practices, or who fail to adhere to its fixed prices; and (d) extorting money from such recalcitrant barbers.

The prosecutor claims that the relators had imported from out of the State two dynamiters, namely, the defendants Hagewood, for the purpose of bombing the barbershop of Peter Sperlonga and Thomas Fluenti; and that the relator Calascione is the leader and dominant spirit in the conspiracy.

On December 4, 1962, in a police raid upon a *restaurant* in Hicksville, in the Town of Oyster Bay, Nassau County, the police found 36 sticks of dynamite.

After the police raid and on the same day, relator Calascione was arrested. Two days later he was released under $50,000 bail by a Justice of the Supreme Court. Upon the filing of the superseding indictment on February 15, 1963, he was again released under $50,000 bail, this time by the County Judge. Relator Vito surrendered after the filing of the indictment; he was also released under $50,000 bail by the County Judge.

Both relators have prior criminal records. Relator Calascione, who is now 48 years of age, in 1933 was convicted of robbery, second degree; in 1948 he was convicted for possessing and transporting alcohol or liquor in violation of the Federal law; and in 1950 he was again convicted of the same Federal offense.

---

* The two Hagewoods are in jail; they defaulted in the posting of bail. The six others: Salvatore Giglio, Anthony Rubino, Sam Conzo, Angelo Fusco, Michael Grosso and Mark Vitucci, have pleaded guilty and are awaiting sentence. Defendant Giglio has since died, as indicated hereafter.

For the major part of his adult life he claims to have been engaged in the restaurant business and to be presently the manager of a restaurant in Nassau County.

Relator Vito, who is now about 53 years of age, was twice convicted, once in 1935 and once in 1937, for a similar Federal offense of which the other relator had been convicted. Vito claims to have been '' a restaurant man all his life.''

The indictment came on for trial on Monday, October 7, 1963, in the County Court. Toward the end of the day and after the jury panel had been excused but before any jurors had been selected, the prosecutor moved for the revocation of the relators' bail. He claimed that since their arraignment on the indictment in February, 1963, the situation had radically changed. Thereupon he moved for such revocation on the following six grounds: (1) that on the preceding Saturday, October 5, 1963, the People's witness, Salvatore Giglio, one of the named defendants who had pleaded guilty and was awaiting sentence, suddenly met his death by drowning when he and his automobile plunged off the Metropolitan Avenue bridge and fell into Newtown Creek; (2) that another witness for the People has to be under daily 24-hour police protection because of his fear of the relators and because of '' repercussions '' in this case; (3) that for the same reason, a third witness for the People fled from the jurisdiction of the court, although he has since been apprehended; (4) that one of the defendants who had pleaded guilty advised the prosecutor that he (said defendant) '' was afraid of repercussions and at first refused to give any sort of story at all; '' (5) that he, the prosecutor, personally knows of '' three other witnesses who are scared to death '' because of '' repercussions in this particular case '' and because '' they are afraid '' of the relators; and (6) that basically '' this case arises out of violence.''

No actual proof was adduced, however, which implicated the relators in Giglio's sudden demise or in the extreme fear exhibited by the People's witnesses. That Giglio suddenly died by drowning two days before the commencement of the trial was public knowledge.

On the showing thus made by the prosecutor, the County Judge in the exercise of the discretion vested in him by section 422 of the Code of Criminal Procedure, granted the prosecutor's motion, revoked the relators' bail and remanded them to jail pending trial.

Eight days later, on October 15, 1963, in a habeas corpus proceeding by relators in the Supreme Court, a Justice of that court made an order directing their release on $50,000 bail. The

Justice in his written opinion stated that the only reason for bail " is to secure the presence of a defendant at the trial "; that these relators are on trial and have appeared in court whenever required; that there is no proof " to show any motivation to flee; " and that the fear of some of the People's prospective witnesses and the drowning of one of them—" nothing more being shown, is no legal ground of any kind to revoke bail." As hereafter indicated, we disagree; in our opinion the reasons stated are invalid.

On the same day, October 15, 1963, the trial resumed before the County Judge. In the absence of the jury but after several of them had been selected to serve, the prosecutor again moved to revoke the relators' bail for the reasons previously assigned and for the further additional reasons: (1) that on the previous night, October 14, 1963, the front window of a barbershop in Bay Shore, Suffolk County, had been shattered by two shotgun blasts; that this shop was owned in whole or in part by the said Peter Sperlonga who also owns another barbershop in Plainedge, Nassau County; and that the 12th count of the indictment charged that the shop of Sperlonga in Plainedge " was one of the shops to be bombed; " (2) that another one of the People's witnesses, on that day, admitted having seen relator Calascione, and this witness had expressed anxiety because " of intimidation and fear of harm to his wife and his children " as well as himself; (3) that all the People's witnesses mentioned as being in fear had attended meetings of the proposed Long Island Barber Shop Guild and " since the arrest and since the evidence of dynamite and knowing what the case is about, have become more afraid; " and (4) that there has been a pattern of intimidation of the People's witnesses on the part of the relators.

Again, however, no actual proof was adduced which implicated the relators in the blasting of the Sperlonga barbershop or in the intimidation of the People's witnesses.

On the following day, October 16, 1963, the prosecutor further advised the County Judge that Mr. Sperlonga had been subpœnæd by his office to appear in court that day.

On the showing thus made on October 15 and 16, 1963, the County Judge granted the prosecutor's motion, again revoked the relators' bail, and remanded them to jail pending trial. The County Judge set forth at length the reasons for his decision. In substance he stated that under the statute (Code Crim. Pro., § 422), after the commencement of the trial he is vested with the discretion to commit any defendant to jail pending the trial; and that, upon the basis of the information previously laid before him and upon the further information now brought to his atten-

tion, he exercised his discretionary power to revoke relators' bail and to remand them to jail because "he is firmly convinced" that such action is required "for the proper conduct of this trial and the safety of the witnesses involved as well as the general safety of the community."

On the same day on which the County Judge revoked relators' bail for the second time, that is, on October 16, 1963, the relators instituted another habeas corpus proceeding in the Supreme Court. In that proceeding another Justice of the Supreme Court made an order again directing relators' release on $50,000 bail. In his written opinion, the Justice, after reviewing all the prior proceedings, held: (1) that "when the trial stage has been reached the defendant's right to bail is of necessity affected by considerations other than those which operate before trial;" (2) that under the statute (Code Crim. Pro., § 422) the Trial Judge is vested with the discretion to revoke a defendant's bail; and (3) that during the course of the trial he may exercise such discretion in order to "deal effectively with any real threat to the orderly progress of such trial, including, if necessary, the revocation of bail." However, such Justice further held that under the circumstances here the Trial Judge improperly exercised his discretion because there was "no reasonable foundation" to support either his conclusion that there was any likelihood of intimidation of the witnesses or harm to them, or his conclusion "that revocation of bail is the necessary deterrent."

The Warden of the County Jail through the District Attorney has appealed from both the first and second orders made by the Justices of the Supreme Court directing the relators' release on bail. Since the second order granted the same relief as the first, we may dismiss the appeal from the first order as academic.

Relators are now at large and their trial in the County Court has been in progress. What effect their release may actually have had upon the People's witnesses or upon their testimony, we can only speculate; in any event it cannot and need not be considered on these appeals. In determining the propriety of the second order of the Supreme Court made October 21, 1963, we are confined to the facts as they *then* existed and as they appear in the records before us.

While we disagree with the conclusions and inferences from the facts drawn by the Justice of the Supreme Court who made the second order, we are wholly in accord with the principle of law which he invoked, namely: that after the commencement of a trial the Trial Judge is vested with the discretionary power to revoke a defendant's bail and to remand him to jail pending

148

the trial. He has such power both under the common law and under the statute (Code Crim. Pro., § 422), the latter being a codification of the common law (*United States* v. *Rice,* 192 F. 720, cited and quoted with approval in *Fernandez* v. *United States,* 81 S. Ct. 642, and *Carbo* v. *United States,* 82 S. Ct. 662, 668; *Carbo* v. *United States,* 288 F. 2d 282, 285; *United States* v. *Bentvena,* 288 F. 2d 442, 445; *People ex rel. Rupoli* v. *McDonnell,* 277 App. Div. 74).

As the cited cases clearly indicate, such discretionary power is to be exercised whenever there is reason to believe that it is necessary " to render fruitless " any attempt to interfere with witnesses or jurors or with the expeditious trial of the action or with the proper administration of justice. Every court engaged in the trial of a criminal case, as an incident to its inherent power to manage the conduct of the proceedings before it, is empowered " to revoke bail during the course * * * [of the trial] when such action is appropriate to the orderly progress of the trial and administration of justice; " it is sufficient if the record discloses some rational basis for the Trial Judge's determination; and, since he is imbued with the atmosphere of the trial and has the " feel " of the case, his determination is entitled to great weight (*Fernandez* v. *United States,* 81 S. Ct. 642, 644, 645, *supra*).

Therefore, a defendant who challenges an order respecting bail is required " to show special reasons which justify disturbing the order; " every Judge sitting in review should give " great deference to the adverse action of the lower court " (*Petition of Johnson,* 72 S. Ct. 1028, 1031); and, in the ordinary case, it has been held that upon the basis of a " cold record," the reviewing Judge or court should not disturb a bail order made by the Trial Judge, even though it has been made in reliance " upon oral representations of counsel, or the court's own observation, or even the ' feel ' of the atmosphere of the trial " (*Carbo* v. *United States,* 288 F. 2d 282, 286, *supra*; *Fernandez* v. *United States,* 81 S. Ct. 642, *supra*; *Fiano* v. *United States,* 259 F. 2d 135).

In the light of the applicable rules, we are constrained to disagree with the Justice below that there was no " reasonable foundation " for the action of the Trial Judge here in revoking relators' bail. On the records before us we find such a reasonable foundation.

Here, while all the prosecutor's statements were not supported by actual proof, such proof was not indispensable. The truth of his statements was confirmed by: (1) the sudden unexplained death two days before the trial of the codefendant Giglio who

had pleaded guilty and who was an important witness for the People; and (2) the shattering by shotgun blasts of one of the barbershops owned by Peter Sperlonga, a witness named in the indictment and who had been subpœnæd by the District Attorney to testify at the trial two days later. In our opinion, these two events, when weighed together with all the circumstances surrounding this prosecution, establish a reasonable foundation for the Trial Judge's action in revoking bail. Our conclusion, therefore, is necessarily based upon: (1) the prosecutor's representations; (2) the nature of the offenses charged in the indictment, to wit: the possession of explosives, extortion and coercion; (3) the relators' past criminal record; and (4) the unexplained drowning of one witness on the eve of the trial and the blasting of another witness' shop upon the inception of the trial. Considered cumulatively, all these factors furnished a very reasonable foundation for the Trial Judge's exercise of his discretion in revoking relators' bail. They were sufficient to permit the Trial Judge to conclude that a plan to intimidate the People's witnesses and to subvert the orderly processes of the trial existed and that such plan would be thwarted or impeded if the relators were confined to jail during the trial.

It is interesting to observe that in the first *Carbo* case (288 F. 2d 282, 286, *supra*), while the Circuit Court found that the circumstances then presented did not constitute a reasonable foundation for the trial court's determination to revoke bail, the Circuit Court expressly permitted the trial court to make such a determination *de novo* in the light of any additional circumstances which might later be presented. The trial court thereafter did make such a determination on the ground that the safety of the witnesses required it; such determination was sustained on appeal; and the Supreme Court of the United States denied certiorari (*Carbo* v. *United States,* 288 F. 2d 686, 365 U. S. 861).

It is not without significance, and it is worth noting, that for substantially the same reasons for which Carbo had been denied bail during trial, he was also denied bail after conviction during the pendency of his appeal. (*Carbo* v. *United States,* 82 S. Ct. 662, 664, 666, affg. 302 F. 2d 456.)

Accordingly, the appeal from the first order should be dismissed; the second order should be reversed on the law and the facts and in the exercise of discretion; and the relators should be remanded to jail pending trial.

This determination is without prejudice to a new application for release on bail upon any new state of facts, if relators be so advised.

150

The findings of fact implicit in the decision of the lower court which may be inconsistent herewith are reversed, and new findings are hereby made as herein indicated.

BELDOCK, P. J., KLEINFELD, CHRIST, BRENNAN and HILL, JJ., concur.

Appeal from order of October 15, 1963, dismissed as academic, without costs.

Order of October 21, 1963, reversed on the law and the facts and in the exercise of discretion, without costs; and relators remanded to the custody of the Warden of the Nassau County Jail, without prejudice to a new application for release on bail upon any new state of facts, if relators be so advised.

Findings inconsistent herewith are reversed and new findings are made as indicated in the opinion.