438 P.2d 514

Reies Lopez TIJERINA et al., Petitioners,

v.

J. E. BAKER, Warden of the New Mexico State Penitentiary and Bennie Naranjo, Sheriff of Rio Arriba County, Respondents.

No. 8582.

Supreme Court of New Mexico.

Jan. 16, 1968.

Charles Driscoll, Lorenzo E. Tapia, Albuquerque, Joseph A. Roberts, Neil C. Stillinger, Charles S. Solomon, John A. Mitchell, Santa Fe, for petitioners.

Alfonso G. Sanchez, Dist. Atty., Patricio Sanchez, Asst. Dist. Atty., for respondents.

Boston E. Witt, Atty. Gen., amicus curiae.

## OPINION

PER CURIAM.

Reies Lopez Tijerina, Cristobal Tijerina, Ramon Tijerina, Rose Tijerina, Baltazar Martinez, Baltazar Apodaca, Cirilio Garcia, Tobias Leyba, Jerry Nolls, Abelicio Moya, Moises Morales, Esequiel Dominguez, Victor Dominguez, Salomon D. Velasquez, Tony Valdez, Jose Madril, Juan Valdez, Reyes Hugh Lopez Tijerina, Jr., Alfonso Chavez and Geronimo Borunda filed an original habeas corpus proceeding in the Supreme Court seeking their release from custody because of an asserted unlawful revocation of the bail bonds under which they had been freed pending a preliminary hearing.

At the outset of the habeas corpus hearing, counsel for Ramon Tijerina and Baltazar Martinez advised the court that these two defendants have not been re-arrested and are not in custody. They ask, however, that their right not to be taken into custody under the order revoking their bonds be determined.

It is well settled that an actual or physical restraint is required to authorize relief by habeas corpus. Annot., 14 A.L.R. 344. Section 22-11-1, N.M.S.A.1953, so far as pertinent, provides:

"Every person imprisoned or otherwise restrained of his liberty * * * may prosecute a writ of habeas corpus * * * to obtain relief from such imprisonment or restraint, if it proves to be unlawful."

The writ, insofar as it pertains to Ramon Tijerina and Baltazar Martinez will, accordingly, be discharged as improvidently issued.

Petitioners, charged by criminal complaint with several counts of kidnapping in violation of § 40A–4–1, N.M.S.A.1953, a capital offense, were arrested and confined without bail. Section 13, Article II of the New Mexico Constitution provides:

"All persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great. * * *"

After a hearing upon the defendants' motion to be admitted to bail, at which the defendants were present and represented by counsel, Judge Joe Angel, district judge of the Fourth Judicial District, sitting as a committing magistrate, found that "the proof is evident and the presumption great that a capital offense has been committed by the following persons: Juan Valdez, Tobias Leyba, Reies Lopez Tijerina and Baltazar Apodaca." These four were denied bail; cash bond in the sum of $2500 or property bond of $5000 was fixed for the other defendants, all of whom were later released after posting such bonds. The four who had been denied bail filed a motion seeking a reconsideration of their motion and asserted in substance that, notwithstanding the finding that the proof was evident or the presumption great that they had committed a capital offense, the magistrate had discretion to admit them to bail. At a hearing they persuaded the magistrate that he did have such discretion, whereupon he ordered them admitted to bail.

Thereafter, a jailer at the Rio Arriba County Courthouse, and a principal witness against the defendants or some of them, was murdered and, upon application by the district attorney and at an ex parte hearing, the magistrate ordered the bonds of all of the defendants revoked and issued a warrant for their arrest and an order that they be confined in the state penitentiary for safekeeping pending the further order of the magistrate.

The basic issue to be determined in this proceeding is whether, under these circumstances, the magistrate had a right to revoke the bonds of these petitioners, under which they had been at liberty. That general issue presents the questions: (1) having fixed the amount and accepted bail, is that order res judicata and not subject to revision or revocation for any reason; (2) if the bonds can be revoked under proper circumstances, can they be revoked without notice and a hearing at which the defendants are present and represented by counsel; and (3) does the court have discretion to grant bail to one for whom he has found the proof evident or the presumption great that such person committed a capital offense?

■ In a habeas corpus proceeding concerning the right to bail, the court is required to "review the proceedings or action of the committing magistrate." Section 22–11–23, N.M.S.A.1953.

■ We cannot agree with petitioners' contention that the action by the magistrate in fixing the amount and admitting the defendants to bail is res judicata nor, in our opinion, is the reasoning in State ex rel. Starritt v. Newman, 114 Okl. 228, 245 P. 999, and other cases relied upon by petitioners, persuasive. Kentucky's highest court, in Young v. Russell, 332 S.W.2d 629, examined and analyzed the reasoning and basis of each text and decision relied upon by petitioners and concluded that all of those authorities and precedents "are the progeny of Ex parte Augustine, a wayward and fertile ghost which ought to be laid to rest." We agree with the Kentucky court's appraisal of those authorities. Compare Ex parte Hammock, 78 Ala. 414 (1885).

Young v. Russell, supra, then went on to say:

"It is our opinion that the court having jurisdiction of a criminal cause has the same control of its orders with respect to bail as it has over its other interlocutory orders in the proceeding, that this is an inherent power not depending on special statute * * *. An order entered on a motion for bail is not a final order, and is not appealable. * * *"

People ex rel. Calascione v. Ramsden, 20 A.D.2d 142, 246 N.Y.S.2d 84; Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769.

 Generally, provisions with regard to admitting to bail in criminal cases are based upon the idea that a person accused of crime shall be admitted to bail until adjudged guilty by the court of last resort to him. However, this right is not absolute under all circumstances. In People v. Ramsden, supra, the New York court said that after commencement of trial, the court has a common law power to revoke a defendant's bail and remand him to jail. That inherent power of the court was extended in Carbo v. United States, supra, until such time as the case is finally disposed of. United States v. Rice, 192 F. 720 (S.D.N.Y.1911), relied upon a power of the court to revoke bail which was said to be inherent in its duty to insure the efficient administration of criminal justice. See United States v. Bentvena, 288 F.2d 442 (2d Cir., 1961).

If the court has inherent power to revoke bail of a defendant during trial and pending final disposition of the criminal case in order to prevent interference with witnesses or the proper administration of justice, the right to do so before trial seems to be equally apparent under a proper set of facts. Since there was no hearing or evidence taken on the motion to revoke the bonds, the record does not disclose any proof of facts or circumstances which motivated the magistrate in revoking them. That being so, there is nothing before us which presents an issue as to the sufficiency of the proof to authorize revocation of the bonds. We are concerned with the procedure by which the bonds were revoked and these petitioners confined in the penitentiary. The record is clear that the order of revocation and the issuance of a warrant for their arrest were made ex parte, and without notice to or an opportunity to the petitioners to be heard.

 The Constitution gives to one accused of crime the right of personal liberty pending trial, except under certain circumstances. We have found no decisions in this or any other jurisdiction concerning the procedure for revocation of a bond. As long ago as Ex parte Lucero, 23 N.M. 433, 168 P. 713, L.R.A.1918C 549, this court said that a suspended sentence gives a defendant his right of personal liberty and that due process requires a notice and hearing before such suspension can be revoked. See also Blea v. Cox, 75 N.M. 265, 403 P.2d 701; State v. Peoples, 69 N.M. 106, 364 P.2d 359. Upon this principle, it would seem that due process would also require notice and an opportunity to be heard before bond can be revoked and a defendant remanded to custody.

The third issue presented by this proceeding concerns only Juan Valdez, Tobias Leyba, Reies Lopez Tijerina and Baltazar Apodaca, against whom the magistrate expressly found the proof evident and the presumption great that they had committed a capital offense with which they were charged. We are required to resolve the question as to whether, under the record before us, the magistrate has power to grant bail to those four defendants.

 Under our holding in Ex parte Towndrow, 20 N.M. 631, 151 P. 761, the charge of a capital offense raises a rebuttable presumption that the proof is evident and the presumption great that the defendant so charged committed the capital offense, and one so accused is not entitled to bail until that presumption is overcome.

At a hearing before the magistrate at which the defendants were present and represented by counsel, the magistrate, after hearing evidence, determined that all of the defendants, except the above four, were entitled to bail. In denying bail to these four defendants, the magistrate did not rely alone on the presumption but found as a fact from the evidence adduced that the proof was evident and the presumption great that these four had committed a capital offense. The four were, accordingly, denied bail. Upon motion for reconsideration of the application for bail as to these four defendants, the magistrate, after legal arguments, allowed them bail. Except for a contrary record, it might be argued that the subsequent orders admitting these four defendants to bail amounted to a change of mind by the magistrate on the issue as to whether the proof was evident or the presumption thereof great, and to a determination that neither proof nor presumption was of that degree. The record, however, completely contradicts that contention. Following denial of bail to them, those four defendants filed a written motion seeking reconsideration of their application for bail which asserted in substance that even though the proof that they had committed a capital offense was evident or the presumption great, the magistrate nevertheless had discretion to allow bail. The record makes it abundantly clear that the magistrate did not change his mind regarding the degree of proof adduced at the bail hearing but that he was, in fact, persuaded that as a matter of law he had discretion to allow bail, notwithstanding his determination that as to the four defendants the proof was evident or the presumption great. The order permitting bail to three of the four defendants and again denying bail to Reies Lopez Tijerina recites:

"1. The Court has discretion to allow bail for said Defendants under the Constitution and Statutes of the State of New Mexico, even when the proof is evident or the presumption great that a capital offense has been committed by said Defendants."

Carrying out his determination that under the law he had such discretion, he then further determined, "in the exercise of said discretion," bail for each of said defendants should be allowed. The magistrate was, however, later persuaded that similar bail should be permitted to Reies Lopez Tijerina.

Furthermore, under §§ 22–11–23 and 22–11–24, N.MS.A.1953, this court in habeas corpus reviews the proceedings before the magistrate concerning bail. Our review of the record convinces us that the determination by the magistrate that the proof against these four defendants was evident or the presumption great is substantially supported by the evidence.

Provisos and exceptions both operate to restrict the generality of the preceding language in a legislative enactment or constitutional provision. It will be noted that the exception in Section 13, Article II of the New Mexico Constitution restricts the right to bail as to persons charged with a capital offense against whom the proof is evident or the presumption great.

It is not necessary to resolve the question before us that we determine whether the Constitution prohibits bail to persons coming within the exception set forth in Section 13 of Article II; § 41–4–5, N.M. S.A.1953, expressly prohibits the granting of bail to these four defendants. It reads:

"The judge of the court where any indictment may be pending may, in his discretion, admit to bail any person accused by indictment of a capital crime wherein the proof was evident or the presumption so great that the party so accused was not entitled to bail, after such person shall have been confined in jail for two [2] consecutive terms of court without trial, subsequent to the term at which the indictment may have been presented."

It is axiomatic that statutes should be construed according to their subject matter and the purpose for which they were enacted. The consequences that may result from one meaning rather than another are to be considered in determining the legislative intent. This statute is affirmative in form and language authorizing the granting of bail in a particular manner and under particular circumstances, i. e., "after such person shall have been confined in jail for two [2] consecutive terms of court without trial." Such statutes are generally held to exclude every other manner. Even though it is phrased in the affirmative, it implies a negative. Nelson v. Nash, 126 W.Va. 568, 29 S.E.2d 253. A holding that the court had discretion at all times to grant bail even though the proof that the defendant had committed a capital offense was evident or the presumption great would be to attribute a useless act to the legislature. It is clear to us that the magistrate exceeded his jurisdiction in granting bail to Juan Valdez, Tobias Leyba, Reies Lopez Tijerina and Baltazar Apodaca.

Section 22–11–24, N.M.S.A.1953, requires this court to either "commit to jail, discharge or recognize such person to appear before the district court as the case may require."

It is, therefore, ordered that Cristobal Tijerina, Rose Tijerina, Cirilio Garcia, Jerry Nolls, Abelicio Moya, Moises Morales, Esequiel Dominguez, Victor Dominguez, Salomon D. Velasquez, Tony Valdez, Jose Madril, Reyes Hugh Lopez Tijerina, Jr., Alfonso Chavez and Geronimo Borunda be released from custody at such time as they shall have filed in Cause No. 3938 on the criminal docket of Rio Arriba County, New Mexico, good and sufficient bonds for their appearance before the committing magistrate, acting in said cause, on January 29, 1968, and continuing in attendance from day to day until such case is determined, and abide the order of such committing magistrate. Such bonds shall be in the principal sum of $2500 if secured by an authorized surety company or in the principal sum of $5000 if executed by personal sureties. Such bonds shall be approved by the sheriff of Rio Arriba County, New Mexico.

It is further ordered that Juan Valdez, Tobias Leyba, Reies Lopez Tijerina and Baltazar Apodaca be and they are hereby remanded to the custody of the Warden of the New Mexico State Penitentiary for safekeeping subject to the further orders of the committing magistrate in said Cause No. 3938, or of any other court having jurisdiction.

It is so ordered.

MOISE, Justice, and SPIESS, Chief Judge, Court of Appeals (concurring in part and dissenting in part).

Being of the opinion that the majority has undertaken to review the actions of the district court acting as a committing magistrate as on an appeal, and has thereby fallen into error, we express our dissent from the refusal of the court to make the writ of habeas corpus permanent as to petitioners Juan Valdez, Tobias Leyba, Reies Lopez Tijerina and Baltazar Apodaca, and to admit them to bail.

Sections 22–11–23 and 22–11–24, N.M.S.A.1953, are referred to by the majority, but not quoted. The two sections read:

"22–11–23. Hereafter all persons to whom bail has been denied or who are confined for failure to give bail, may have the benefit of a writ of habeas corpus for the purpose of being admitted to bail or having the bail reduced, and the court or judge shall, upon habeas corpus, review the proceedings or action of a committing magistrate."

"22–11–24. When an application is made before any authority authorized by law to issue such writs of habeas corpus it shall be the duty of such officers to

issue a writ of certiorari commanding the committing·magistrate forthwith to send to said officers a full and complete transcript of all, his proceedings had thereof, and the said officer upon the return of such writ shall proceed to examine the case de novo and either commit to jail, discharge or recognize such person to appear before the district court as the case may require."

The review of the "proceedings or action" of the committing magistrate referred to in § 22–11–23 is to be a de novo examination, not an appellate review. This was held in Ex parte Simpson, 37 N. M. 453, 24 P.2d 291 (1933), a case wherein petitioner had been charged with murder in the first degree, a capital offense, and had been committed by the magistrate without bail. Habeas corpus was denied by the district judge, and thereafter sought in the supreme court. The only evidence before the court was that taken before the examining magistrate. The court stated clearly that in such a proceeding, it sat "not as a reviewing court, but in the exercise of our original jurisdiction, not superior to the district courts, but co-ordinate." It stated further that, in considering the record:

"* * * this court weighs the evidence and passes upon its conflicts, as a trial court, not in the manner of the application of the substantial evidence rule, but whether we would be justified in our conscience as a trial court in sustaining a verdict of murder in the first degree when returned by a jury."

That the majority has not adopted this approach is evident from the statement that, "Our review of the record convinces us that the determination by the magistrate that the proof against these four defendants was evident or the presumption great is substantially supported by the evidence."

An examination of this record, being all the proof before us, in our opinion does not disclose such a state of circumstances as would justify us when acting as a trial court in sustaining a conviction of a capital offense, if such a verdict were returned by a jury based thereon. This being true, we must register our dissent from the denial of bail to the four named petitioners.

For fear of possibly prejudicing the trial of this case in some manner, we refrain from any detailing of the facts disclosed by the record, or any discussion of when an offense which might under certain circumstances be capital would not be so considered in a habeas corpus proceeding in which the right to bail is the issue. However, see In re Losasso, 15 Colo. 163, 24 P. 1080 (1890); Ford v. Dilley, 174 Iowa 243, 156 N.W. 513 (1916); Holland v. Asher, 314 S.W.2d 947 (Ky.1958); Day v. Caudill, 300 S.W.2d 45 (Ky.1957); State v. Konigsberg, 33 N.J. 367, 164 A.2d 740, 89 A.L.R.2d 345 (1960); Application of Corbo, 54 N.J.Super. 575, 149 A.2d 828, cert. denied, Carbo v. Donahue, 29 N.J. 465, 149 A.2d 859 (1959); In re Thomas, 20 Okl. 167, 93 P. 980 (1908).

We would add a word that while we agree with the majority in the conclusion that the other petitioners should be admitted to bail, the proper basis for ordering it would have been that discussed above as to the four.